1

2

3

4

5                IN THE UNITED STATES DISTRICT COURT

6           FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   EDWARD ALVARADO, et al,            No. C 04-00098 SI
                                (Related Case No. C 04-0099 SI)

9            Plaintiffs,

10    v.                             **ORDER GRANTING DEFENDANT'S**
**SUMMARY JUDGMENT MOTIONS AS**
**TO PLAINTIFFS JOHN AZZAM,**

11   FEDEX CORPORATION,            **CHRISTOPHER WILKERSON, AND**
**LORE PAOGOFIE, AND DENYING**

12           Defendant.             **PLAINTIFFS' RULE 56(F) REQUESTS**
                                 /

13

14        On August 19, 2005, the Court heard oral argument on defendant's motions for summary judgment

15 as to three plaintiffs: John Azzam, Christopher Wilkerson, and Lore Paogofie and on plaintiffs' requests for

16 relief pursuant to Rule 56(f). Having carefully considered the arguments of counsel and the papers submitted,

17 the Court hereby GRANTS defendant's motions for the reasons set forth below.

18

19                               **BACKGROUND**

20        This case arises out of plaintiffs' employment with defendant FedEx Corporation ("FedEx" or

21 "defendant"). Plaintiffs allege various forms of discrimination against FedEx, including discrimination in

22 promotion and compensation, harassment, and retaliation, and assert claims for disparate impact and disparate

23 treatment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the California Fair Housing and

24 Employment Act ("FEHA"), Cal. Gov. Code § 12940, and 42 U.S.C. § 1981. Defendant has filed motions

25 for summary judgment as to three plaintiffs, John Azzam, Lore Paogofie, and Christopher Wilkerson, relying

26 exclusively on the deposition testimony of these plaintiffs. Plaintiffs oppose the motions and seek relief pursuant

27 to Federal Rule of Civil Procedure 56(f).

28        In requesting Rule 56(f) relief, plaintiffs repeat the same arguments made in Rule 56(f) motions made

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

by other plaintiffs,[1] stating that defendants have still not fully produced documents from Plaintiff's First Set of Requests for Production, including external EEO complaints filed with the EEOC and DFEH and a privilege log, and from Plaintiff's Second Set of Requests for Production. According to plaintiffs, until these discovery matters are resolved, they have had no full opportunity to obtain facts necessary to oppose the summary judgment motions.

The discovery disputes in this action have been frequent and heated. On November 23, 2004, plaintiffs served their First Set of Requests for Production on defendant. They then brought a motion to compel production of many of these documents, which was set for hearing on March 11, 2005. At that hearing, defendant stated that it would produce all responsive documents "forthwith," and the parties entered into a stipulated order to that effect. See March 15, 2005 Stipulated Order. Defendant then filed summary judgment motions against four plaintiffs, which were set for May 27, 2005. Plaintiffs sought a continuance of these motions pursuant to Federal Rule of Civil Procedure 56(f) on grounds that defendant had not produced documents as required by the March 11, 2005 stipulated order. On May 25, 2005, the Court granted this request and re-set the hearing for June 24, 2005. On May 26, 2005, defendant filed a letter brief seeking "relief" from the Court's order. Plaintiffs requested an emergency hearing regarding defendant's failure to produce documents, and opposed defendant's request. Plaintiffs also filed an additional request for Rule 56(f) relief. On June 22, 2005, the Court granted a request for a one-week continuance of the four summary judgment motions, which were re-set for July 1, 2005.[2] Plaintiffs subsequently sought a further continuance, pursuant to Rule 56(f), of all six of the summary judgment motions set for Friday, July 1, 2005, which the Court granted during a telephone conference held on June 27, 2005. See Docket # 157. In addition, at that conference, the Court ordered FedEx to produce all documents responsive to plaintiffs' First and Second Sets of Requests for Production by July 8, 2005. Plaintiff subsequently filed a further letter brief claiming that

---

[1] Defendant has also filed summary judgment motions regarding plaintiffs Tanda Brown, Lasonia Walker, Kevin Neely, Pernell Evans, Alexander Rivera, and Gary White. Plaintiffs filed Rule 56(f) requests with respect to those summary judgment motions as well because of FedEx's failure to produce documents responsive to plaintiffs' First and Second Sets of Requests for Production. The Court granted these Rule 56(f) requests but has not yet ordered supplemental briefing for or re-set these motions.

[2] Meanwhile, defendant also filed summary judgment motions against plaintiffs Gary White and Alexander Rivera, set for July 1, 2005.

United States District Court

For the Northern District of California

1    defendant had not produced all responsive documents because it had merely made personnel files available for

2    inspection pursuant to Fed. R. Civ. P. 34, and seeking the Court's intervention.  The Court denied this request.

3    See Docket # 169.

4        On July 28, 2005, plaintiffs' counsel filed a letter brief with the Court asking for a telephone conference

5    regarding defendant's "failure to allow inspection of documents."  Defendant filed a responsive letter describing

6    a different series of events, and it is unclear from these letter briefs what remedy each party seeks.  Plaintiff

7    stated that the documents were not prepared for inspection and that defense counsel's representative

8    "obstruct[ed] our attempts to obtain documents during that on-site inspection."  Parker Decl. Re Azzam ¶ 5.

9

10        The three summary judgment motions now before the Court were filed by defendant on July 15, 2005

11    and noticed for August 19, 2005.  Plaintiffs apparently did not attempt to inspect the relevant documents at

12    FedEx until July 27, 2005.  In support of its request for Rule 56(f) relief, plaintiffs each submit the same

13    arguments – largely verbatim – that they raised in their prior Rule 56(f) filings.  While the Court remains

14    concerned about FedEx's general attentiveness to its discovery obligations, it is not persuaded that defendant's

15    prior failures to produce responsive documents have hampered these three plaintiffs' ability to oppose these

16    summary judgment motions.  Therefore, the Court will consider plaintiffs' Rule 56(f) motions individually, in the

17    context of the factual issues presented by each motion.[3]

18

19                  **LEGAL STANDARDS**

20    **Summary Judgment**

21        Summary judgment or adjudication is proper when "the pleadings, depositions, answers to

22    interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to

23    any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

24

25        [3] In their oppositions and supplemental materials, each plaintiff asks the Court to take judicial notice

26    of the class action complaint filed with this Court in Satchell, et al. v. FedEx, C 03-2659 SI, as well as of a
statistical report submitted in that case by Dr. Drogin.  The Court DENIES both requests.  The Court has

27    related cases C 04-0098 SI and 04-0099 SI, but these cases are not formally related to the Satchell class
action.  In addition, the Drogin Report submitted in that action is not part of the record in this case.  As

28    defendants point out, no experts have been noticed or disclosed in this case.  Accordingly, the Court DENIES
both request for judicial notice.

United States District Court
For the Northern District of California

1    In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden

2    of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any

3    genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth,

4    by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial."

5    See T. W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing

6    Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 317 (1986)).  In judging evidence at the summary

7    judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws

8    all inferences in the light most favorable to the non-moving party.  See T.W. Electric, 809 F.2d at 630-31

9    (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348 (1986)); Ting

10   v. United States, 927 F.2d 1504, 1509 (9th Cir. 1991).  The evidence presented by the parties must be

11   admissible.  Fed. R. Civ. P. 56(e).  Conclusory, speculative testimony in affidavits and moving papers is

12   insufficient to raise genuine issues of fact and defeat summary judgment. Thornhill Publ'g Co., Inc. v. GTE

13   Corp., 594 F.2d 730, 738 (9th Cir. 1979).

14

15   **Rule 56(f)**

16   Pursuant to Federal Rule of Civil Procedure 56(f), upon a showing by the party opposing a motion for

17   summary judgment that it "cannot for reasons stated present by affidavit facts essential to justify the party's

18   opposition," the court may deny or continue the motion for summary judgment in order to permit that party an

19   opportunity to obtain necessary discovery.   A Rule 56(f) motion should be granted where the party opposing

20   summary judgment makes a timely application that specifically identifies relevant information to be discovered,

21   and there is some basis for believing that such information actually exists, and would prevent summary

22   judgment. Nidds v. Schindler, 113 F.3d 912, 921 (9th Cir. 1996); Visa Int'l Serv. Ass'n v. Bankcard Holders,

23   784 F.2d 1472, 1475 (9th Cir. 1986).

24

25

26

27                                              **DISCUSSION**

28

4

United States District Court

For the Northern District of California

In response to defendant's motions, plaintiffs have submitted Opposition briefs, the Declaration of Tanda Brown in Support of Christopher Wilkerson and Lore Paogofie's Oppositions, the Declaration of Kay McKenzie Parker in Support of John Azzam's Opposition, the Declaration of Rachael Orejana in support of all three plaintiffs' Oppositions, and two Supplemental Declarations of Kay McKenzie Parker (Supplemental Declarations #1 and #2). Supplemental Declaration #1 contains "Supplemental Facts" specific to each plaintiff. Supplemental Declaration #2 contains further "Supplemental Facts" that "apply to all three groups of the named plaintiffs, unless otherwise expressly noted as applying to particular plaintiff(s)." Supp. Parker Decl. #2 at 3:7-9. Each Opposition brief devotes several pages to the plaintiff's "Employment History and Specific Facts," but with a few exceptions,[4] these factual narratives are devoid of citations to the record. See Pl. Azzam's Opp'n at 6:1-10:18; Pl. Wilkerson's Opp'n at 6:4-8:18; Pl. Paogofie's Opp'n at 5:19-8:12.

At oral argument on these motions, plaintiffs' counsel described their submissions to the Court as "piecemeal" because of the protracted nature of discovery in this case. Between these piecemeal filings and plaintiffs' failure to cite to the record in its Opposition briefs, it is extremely difficult for the Court to identify which of the statements and arguments by plaintiffs' counsel have evidentiary support. On summary judgment, the Court views all facts in the light most favorable to the non-moving party – here, of course, to plaintiffs. But the Court must restrict its inquiry to facts supported by the record, and plaintiffs may not rely on the allegations made in pleadings or on their beliefs – however reasonable – about the "Ole Boys Network" and the pervasive pattern of race and national origin discrimination at FedEx. For example, the Court cannot consider plaintiffs Azzam and Wilkerson's citations to the complaint filed in this case, the original complaint filed in Alameda County Superior Court, or the complaint filed in Satchell v. FedEx, C 03-2659 SI, a class action pending before this Court, as evidence of termination and differential treatment. See Pl. Azzam's Opp'n at 6:5-7; Pl. Wilkerson's Opp'n at 6:22-24. Unsworn allegations in the pleadings are not facts that can be used to defeat summary judgment. Moreover, it is not the Court's task "to scour the record in search of a genuine issue of triable fact," see Kennan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996), and it "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers

---

[4] For example, plaintiff Wilkerson's Opposition cites to the "Decl. of Tanda Brown" at the end of several paragraphs in the factual summary, but does not specify where in that declaration the supporting facts may be found.

with adequate references so that it could conveniently be found." <u>Carmen v. San Francisco Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001).

Applying these standards, the Court considers each summary judgment motion in turn.

## I.     Summary Judgment as to John Azzam

FedEx seeks summary judgment against plaintiff John Azzam on his claims for discrimination based on wrongful termination, failure-to-promote, compensation, discrimination and harassment, and retaliation.

Plaintiff Azzam was born in Beirut, Lebanon. Azzam Depo. at 17. He began working at FedEx as a data entry clerk, a position he obtained through a temp agency.[5] <u>Id.</u> at 11-12. He was hired as a permanent part-time courier at the Sunnyvale facility ("COAA") in September 1999. <u>Id.</u> at 24. He submitted a resignation for his Monday through Friday part-time route and began working only on Saturdays in June 2001 because of school obligations and an internship with the City of San Jose, but eventually began working another Monday through Friday part-time route. <u>Id.</u> at 45-48. He was offered a permanent part-time route in July 2001, which he turned down. <u>Id.</u> at 49.

In January 2002, plaintiff's employment with FedEx was terminated because he received three performance reminders within a 12-month period. <u>Id.</u> at 102. Plaintiff was aware that receiving three reminders or some combination of three reminders and written discipline in a 12-month period could result in termination. <u>Id.</u> at 59. On December 10, 2002, plaintiff filed a complaint with the California Department of Fair Employment and Housing ("DFEH").

### A.     Wrongful termination claim

FedEx seeks summary judgment on plaintiff's wrongful termination claim on two grounds: (1) that the claim is barred by plaintiff's failure to allege termination as discrimination in the DFEH complaint he filed ten

---

[5] These facts are taken from plaintiff's deposition testimony and the parties' papers. As mentioned above, plaintiff's opposition brief contains a narrative description of his employment at FedEx and his discrimination allegations, without citations to the record. The Court does not rely on this narrative statement, but instead restricts its inquiry to facts for which the parties have provided evidentiary support, including the "Supplemental Facts Specific to Plaintiff Azzam" contained in the Supplemental Declaration #1 of Kay McKenzie Parker ("Supp. Parker Decl. #1").

United States District Court
For the Northern District of California

1   months after his termination, and (2) because there is no genuine issue of material fact regarding discrimination

2   in the termination itself.

3   　　　　The Court finds that plaintiff's claim is not barred by his failure to specifically allege wrongful termination

4   in his December 10, 2002 DFEH complaint.  Subject matter jurisdiction "extends over all allegations of

5   discrimination that either fell within the scope of the EEOC's actual investigation or an EEOC investigation

6   which can reasonably be expected to grow out of the charge of discrimination." Freeman v. Oakland Unified

7   Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002) (internal citation omitted); see also Sosa v. Hiraoka, 920 F.2d

8   1451, 1456 (9th Cir. 1990) (the court "must inquire whether the original EEOC investigation would have

9   encompassed the additional charges made in the court complaint but not included in the EEOC charge itself").

10  Plaintiff's DFEH complaint alleges harassment, denial of promotion, and retaliation by Robert Motter and Gary

11  Meek "[o]n or about February 7, 2002," approximately one week after his termination on January 31, 2002.

12  Decl. of Christopher Yost, Ex. C.  The dates of the discriminatory acts, perpetrators, and location of the

13  discrimination are all the same as those in plaintiff's termination claim, see B.K.B. v. Maui Police Dep't, 276

14  F.3d 1091, 1100 (9th Cir. 2002), and therefore an agency investigation would certainly have encompassed

15  the circumstances of his departure from FedEx.

16  　　　　For a wrongful termination claim, a plaintiff must meet the burden-shifting analysis of McDonnell

17  Douglas v. Green, 411 U.S. 792 (1973), whereby he must first establish a prima facie case that (1) he was a

18  member of a protected class, (2) he performed his job in a satisfactory manner, (3) he was discharged, and

19  (4) that similarly situated individuals outside his protected class were treated more favorably.  McDonnell

20  Douglas Corp., 411 U.S. at 802.  If plaintiff succeeds in establishing a prima facie case, the burden shifts to

21  the employer to provide a legitimate, non-discriminatory reason for the discharge.  If the employer is able to

22  articulate such a reason, then the plaintiff must show that the reason given is pretextual, "either directly by

23  persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing

24  that the employer's proffered explanation is unworthy of credence." Texas Dep't of Community Affairs v.

25  Burdine, 450 U.S. 248, 256 (1981).

26  　　　　FedEx argues that plaintiff cannot establish a prima facie case because he was not performing his job

27  in a satisfactory manner based on his admissions during deposition.  In addition, defendant contends that it has

28

1   articulated a non-discriminatory reason for plaintiff's termination: his four performance reminders, three of

2   which he received in a 12-month period, and three On-Line Compliments and Counselings ("OLCCs").   In

3   his opposition, plaintiff submits evidence of the disciplinary history of a purported comparator, a Caucasian

4   employee named Steve Kelso, who was disciplined for poor attendance and punctuality but apparently not

5   terminated from FedEx.  Decl. of Rachael Orejana, Ex. B.

6          Plaintiff received a counseling letter on April 20, 2000, for unsafe driving, because he had received a

7   speeding ticket.  Azzam Depo. at 55-57.  Plaintiff received a performance reminder on October 25, 2001 for

8   backing into a parked car.  Id. at 58-60.  On January 3, 2002, he received a second performance reminder

9   in the form of a day off without pay (called a "decision day") because 28 East Coast packages were found

10  mixed in with West Coast packages, and he had received three OLCCs for similar occurrences. Id. at 77-78.

11  The prior occurrences were: a March 27, 2001 OLCC based on his leaving four international packages in the

12  courier checkout room; a November 19, 2001 OLCC for leaving four East Coast packages mixed with West

13  Coast packages, which plaintiff felt was unfair; and a December 11, 2001 OLCC, the details of which he does

14  not remember.  On January 29, 2002, plaintiff received a letter of suspension with pay "pending an investigation

15  of potential violations regarding his performance improvement."  Azzam Depo. Ex. 17.  On January 31, 2002,

16  he received his third performance reminder for overlooking additional packages on January 25, 2002 and

17  January 28, 2002.  Id. at 102. He was terminated for receiving three performance reminders in a 12-month

18  period, and he admits that he has no reason to believe there were additional reasons for his termination.  Id.

19  at 103-04.

20         To establish a prima facie case despite his disciplinary history, plaintiff draws a comparison to employee

21  Steve Kelso.  According to plaintiff:

22         Kelso received repeated counseling, performance reminders and warnings.  His problems
            included attendance and punctuality a[s] well as allegations of falsifying delivery records.  In
23         fact, Kelso received a total of three performance reminders and/or warnings within [a] 12
            month period.  However, Kelso's manager opted not to terminate him.
24

25  Decl. of Rachael Orejana ¶ 4.

26  Defendant argues that plaintiff and Kelso were not disciplined by the same supervisor nor for the same conduct:

27  Kelso was primarily disciplined for poor attendance and punctuality, while plaintiff was disciplined for

28  misdirecting packages.  In addition, FedEx contends that, because many of the documented disciplines in

United States District Court

For the Northern District of California

1    Kelso's file predate plaintiff's employment with the company, there is no true basis for comparison.

2        Viewing the evidence in the light most favorable to Azzam, the Court finds that he has not established

3    a prima facie case of discrimination because he cannot establish that he was performing his job in a satisfactory

4    manner, as required by McDonell Douglas.  In addition, the Court finds that plaintiff has not shown that

5    FedEx's non-discriminatory basis for terminating him is pretextual.  Plaintiff admits that the performance-related

6    reasons for his termination are true, and he has presented no evidence that any of these reminders or

7    counselings were motivated by discrimination.[6]  The Court therefore GRANTS summary judgment on the

8    wrongful termination claim.

9

10       **B.    Promotion claim**

11       FedEx seeks summary judgment on plaintiff's promotion claim because Azzam never applied for any

12   position other than the one he held with FedEx.  See Azzam Depo. at 44 ("I don't recall ever filling out any type

13   of application for any different position other than what I was.").  Plaintiff's promotion allegation is based on

14   the fact that, in 2001, he mentioned to his supervisor, Corey Waiters, that he wanted to work additional hours

15   but was told that there were no full-time routes available.  Id. at 29-30.  Plaintiff stated that he later saw a

16   Caucasian employee, Michael Potter, coming in as a full-time courier.  He admits, however, that he did not

17   know Potter's qualifications, that Potter did not report to Waiters, that Potter worked the "a.m. shift," and that

18   plaintiff did not tell Waiters he wanted to work this shift and could not have worked in the mornings because

19   of his class and internship commitments.  Id. at 33-35.

20       To establish a promotion claim, plaintiff must show that (1) he is a member of a protected class; (2)

21   he was qualified for the position sought; (3) he was denied the promotion; and (4) individuals outside of the

22   protected class were promoted.  Pejic v. Hughes Helicopters, Inc., 840 F.2d 667 (9th Cir. 1988).  Viewing

23

24   _____

25       [6] In its summary judgment motion, FedEx relied on Azzam's deposition testimony that he did not know
     of any other FedEx employees who received three written warnings, performance reminders, or a combination,
26   and were not terminated.  Azzam Depo. at 151-52, cited in Def.'s Azzam Mot. at 6:18-21.  Plaintiff has now
     provided evidence of at least one other employee who was not terminated despite receiving this amount of
27   discipline.  But even assuming that Kelso is an appropriate comparator and that plaintiff has established a prima
     facie case, plaintiff's admission at deposition that the performance-related reasons for his termination are true
28   and his failure to present evidence suggesting that any of these reminders or counselings were motivated by
     discrimination defeats his claim.

                                            9

1   the evidence most favorably to plaintiff, there is simply no basis to find that plaintiff ever applied for any other

2   position or that he was denied a promotion.

3        Summary judgment is GRANTED as to this claim.

4

5        **C.        Compensation claim**

6        The apparent factual basis for plaintiff's compensation claim is his allegation that he had to confront

7   Corey Waiters on several occasions about "shorting" him on his pay, but each time he ultimately received all

8   of his compensation.   Azzam Depo. at 173.   Despite the complaint's allegations of discrimination in

9   compensation, plaintiff testified that he does not believe his race or national origin played a role in his

10  compensation, and he does not believe he was paid differently than other part-time couriers.  Id. at 22, 172.

11

12

13       **D.        Discrimination and harassment claims**

14       FedEx seeks summary judgment on plaintiff's harassment claim on grounds that, based on his

15  deposition testimony, plaintiff cannot show a genuine question of material fact regarding (1) whether a

16  reasonable person of plaintiff's race or national origin would find the workplace so objectively and subjectively

17  racially hostile as to create an abusive working environment; and (2) whether the defendant failed to take

18  adequate remedial and disciplinary action.  McGinest v. GTE Service Corp., 360 F.3d 1103, 1112 (9th Cir.

19  2004).

20       Plaintiff alleges discrimination and harassment by managers Robert Motter and Gary Meek.  According

21  to plaintiff, conditions for minorities at the Sunnyvale station worsened in 2000 when these two men became

22  managers there.  Azzam Depo. at 42.  He felt targeted by these managers, and testified that "[t]he badgering,

23  the insults, the yelling, the screaming, the pointing, you know, is really what made me realize that they had it in

24  for me."  Id.  Specifically, Meek made comments to plaintiff such as "my grandmother works faster than you,"

25  "move faster, quit your yapping, quit talking," and "stack neater."  He believed that Meek watched him and

26  plaintiff Christopher Wilkerson more closely than other employees, and he overheard Meek tell plaintiff

27  Christopher Wilkerson, who is African-American: "you remind me of Stevie Wonder.  Blind, blind as hell,"

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    which he considered a racial comment.  Id. at 110, 121.

2            With respect to Motter, plaintiff also alleges discrimination based on an incident where Motter required

3    him to do a "twilight delivery"[7] in the Los Altos Hills area.  Plaintiff told Corey Waiters that he felt this was a

4    dangerous assignment because it was raining, and the area was hilly with narrow roads and loose dogs.  Id. at

5    128-29.  According to plaintiff, Motter overheard this statement and spoke to Corey Waiters, and Waiters then

6    told plaintiff that he had to make the delivery or he would lose his job.  Plaintiff handled the route with another

7    person riding with him.  After this incident, plaintiff did not do this route again.  During the second incident,

8    Azzam was working with an African-American employee and three Caucasian employees, when Motter looked

9    at him and said "move faster, don't talk."  Id. at 135-136.  Plaintiff and two other minority employees worked

10   holidays after Motter became a manager at the station, and plaintiff alleges that when he first began working

11   at FedEx, holiday assignments were rotated.  Id. at 177-78.  Plaintiff did not express concern to anyone in

12   management about holiday work schedules; he did not know if there was a bid process to receive holidays off;

13   and he did not know if employees requested the holiday assignment or were required to work then.  Id. at 179-

14   81.

15           In the Ninth Circuit, courts employ a totality of the circumstances test in determining whether a plaintiff

16   has established a hostile work environment, considering factors such as: "[the] frequency of discriminatory

17   conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and

18   whether it unreasonably interferes with an employee's work performance.  Nichols v. Azteca Rest. Enters., 256

19   F.3d 864, 872 (9th Cir. 2001).  To constitute harassment, the workplace must be both objectively and

20   subjectively abusive.  Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000).

21           FedEx argues, and the Court agrees, that Azzam's deposition testimony requires a grant of summary

22   judgment on his harassment claim.  No one at FedEx made a racial slur or offensive remark to plaintiff about

23   his Lebanese or Middle Eastern origin.  The only derogatory comment plaintiff recalls was directed at another

24   employee.  With respect to plaintiff's allegation that Motter required him to make a twilight delivery against his

25   will, plaintiff admits that he does not know whether his race or national origin played any role in this assignment,

26

27   ───────────────

28           [7] A twilight delivery is a nighttime delivery of a package that FedEx had unsuccessfully tried to deliver during the day.

and testified that Motter just "didn't care about his employees" and did not seem "concerned for [his] safety

at all." Id. at 130-31, 136-37.  In addition, plaintiff's testimony about Motter's comment "move faster, don't

talk" does not establish that Motter was singling him out personally, much less on discriminatory grounds.

Plaintiff offers no evidence of racial animus towards him by Meek or Motter, and testifies only about his

subjective belief that they were treating him differently based on his national origin.  In addition, plaintiff has

made no showing that FedEx failed to take remedial action, and he admits that he never used the company's

EEO process to complain about the alleged harassment.

Plaintiff's entire opposition to this claim is contained in a single paragraph, which states:

All of the above factual allegations by plaintiff (and other minorities who have filed
administrative and judicial claims against these same defendants during the same time period)
demonstrate that plaintiff was subjected to working in a hostile environment that altered the
terms and conditions of his employment with FedEx.  Non-minority employees were not
subjected to such hostility.  It is clear that defendants dispute this material fact.

Pl. Azzam's Opp'n at 15:6-11.

Viewing the evidence in the light most favorable to plaintiff, the Court finds that there are no triable issues of

material fact for a jury to decide.

Summary judgment is GRANTED as to this claim.


**E.      Retaliation**

FedEx is entitled to summary judgment on plaintiff's retaliation claim.  To establish a prima facie case

of retaliation, a plaintiff must show that (1) he engaged in protected activity; (2) his employer subjected him to

an adverse employment action; and (3) there is a causal link between the protected activity and the adverse

employment action.  Manatt v. Bank of America, 339 F.3d 792, 800 (9th Cir. 2003).  To show a causal link,

a plaintiff may use circumstantial evidence, but he or she must demonstrate the employer's knowledge of the

protected activity and proximity in time between the protected activity and the adverse action.  Morgan v.

Regents of the Univ. of California, 88 Cal. App. 4th 52 (2000).

Here, plaintiff's protected activity occurred after the adverse employment action.  Azzam was

terminated on January 29, 2002, and he filed his DFEH complaint on December 10, 2002.  There is no factual

basis for a retaliation claim.

**United States District Court**
For the Northern District of California

### F.      Rule 56(f) motion

In his opposition, plaintiff requests a continuance based on defendant's failure to provide documents requested by plaintiff.  Plaintiff states that these documents "will substantiate many of [his] factual allegations." In requesting Rule 56(f) relief, plaintiff repeats the arguments from other plaintiffs' Rule 56(f) motions, stating that defendants have still not fully produced documents from Plaintiff's First Set of Requests for Production, including all external EEO complaints filed with the EEOC and DFEH and a privilege log, and from Plaintiff's Second Set of Requests for Production.  According to plaintiff, "[u]ntil these outstanding critical discovery matters are resolved, Plaintiffs have had no full opportunity to obtain facts necessary to oppose Defendant's instant motion for summary judgment."  Pl. Azzam's Opp'n at 17:15-17.

"Ordinarily, summary judgment should not be granted when there are relevant facts remaining to be discovered, but the party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact." Continental Maritime v. Pacific Coast Metal Trades, 817 F.2d 1391, 1395 (9th Cir. 1987).  The moving party bears the burden of showing (1) that they have set forth specific facts that they hope to elicit from further discovery; (2) that these facts exist; and (3) that the facts are "essential" to resist summary judgment.  State of California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1997). Although Rule 56(f) motions should be granted fairly freely, the Court cannot see how further discovery would provide additional facts precluding summary judgment against this particular plaintiff.  Azzam's own testimony demonstrates that he cannot raise a triable issue of fact as to discrimination in his various claims.

In her declaration in support of the opposition, plaintiff's counsel has informed the Court that, upon reviewing plaintiff's personnel file, she found his parents' personal income tax returns, and that plaintiff has informed her "that at no time whatsoever would he have given FedEx his parents' income tax returns."  Decl. of Jay McKenzie Parker in Support of Azzam Opp'n ¶ 6 (emphasis in original).  Counsel states that no other employee personnel file reviewed contained similar records, and concludes: "Plaintiff John Azzam . . . believes and, I agree with him, that the Defendant surreptitiously and unlawfully obtained his parents' personnel files for the unlawful purpose of attempting to find out the names of all charitable organizations to which they had given donations.  This was because his parents are from a Muslim nation and, based on the national origin of his parents and himself (Lebanese), he was unlawfully and unfairly disciplined, harassed, and eventually terminated

13

1    from FedEx employment." Id. at ¶ 8. Counsel states that she is submitting these documents under seal and asks

2    the Court to allow plaintiff time to investigate how these files were obtained by deposing "operations managers,

3    senior managers, the district managing directors, human resources personnel and other witnesses (whether or

4    not their depositions have previously been taken)" on this issue. Id. at ¶ 9.[8]

5          The Court agrees that FedEx's possession of these tax returns is troubling.  At oral argument on this

6    motion, the Court asked counsel for FedEx how his client obtained these records.  Counsel responded that he

7    did not know and had not asked because the records are not relevant to the pending motions.  This response

8    is unsatisfactory, since the presence of such documents could reflect criminal conduct.[9]  However, the Court

9    agrees that the presence of the records in Azzam's file does not itself create factual issues appropriate for jury

10   determination in this employment case.

11         Accordingly, plaintiff's Rule 56(f) motion is DENIED.

12

13   **II.    Summary Judgment as to Christopher Wilkerson**

14         Plaintiff Wilkerson began working at FedEx on November 29, 1999 as a casual handler at the

15   Sunnyvale location.  Wilkerson Depo. at 31.  Two months later, he was promoted to part-time handler, and

16   on October 27, 2003, he became a part-time courier at the Sunnyvale station.  Id. at 32-33, Ex. 8.  On

17   November 12, 2002, he received the "Bravo Zulu Outstanding Performance" award from manager Roy

18   Johnson, although he believed that manager Aaron Holstein was really responsible for giving him the award,

19   not Johnson. Id. at 183-84.  In 2003, at the suggestion of Aaron Holstein, plaintiff began taking LEAP classes,

20   which are a prerequisite to applying for management positions. Id. at 51-52.  Plaintiff eventually dropped out

21   of the class because he had to pick up his daughter in the mornings. Id. at 53.  Plaintiff still works at FedEx

22   as a part-time courier.  He turned down a full-time courier position in 2004 or the beginning of 2005. Id. at

23   108-109.

24

25         [8] The Court has not received any under seal submission from plaintiff, and hereby ORDERS counsel
     to provide Azzam's tax records for its inspection.

26

27         [9] 26 U.S.C. § 7213 makes it unlawful for federal employees to willfully disclose any tax return to any
     person without authorization, and for other persons to whom unauthorized disclosure has been made to copy
     or publish such returns.  That section also makes it unlawful for anyone to solicit or receive unauthorized tax
28   returns.  Violations of this statute are punishable by imprisonment for up to 5 years.

United States District Court

For the Northern District of California

1    During his employment at FedEx, plaintiff has never received a written warning or performance

2  reminder.  He has received thirteen OLCCs, three of which were negative, and the remainder of which were

3  complimentary.[10]  The first negative OLCC is from June 28, 2000 about reporting to work on time; the second

4  is from November 27, 2001 regarding a problem with a bucket of 21 East Coast documents that needed to

5  be checked; and the third, received on November 3, 2003, notified him that he had taken seven sick days and

6  could be subjected to disciplinary action for further sick days.  Id. at Ex. 13.

7    **A.    Compensation**

8    Plaintiff's compensation claim is apparently based on the allegation that his time cards were altered on

9  two occasions.  See Pl. Wilkerson's Opp'n at 6:13-15.  Plaintiff does not allege, nor does he offer proof, that

10  FedEx paid African-American employees less than white employees for substantially equal work.  FedEx

11  argues that Wilkerson's deposition testimony demonstrates that he cannot establish a compensation claim.

12  Wilkerson testified that he knew of several employees who believed their time cards had been altered: an

13  African-American employee named Andre Megason, a Latino employee, and a Caucasian employee named

14  Lance White.  Wilkerson Depo. at 200.  Plaintiff reported the suspected altering to senior manager Robert

15  Motter, who told him to talk to his supervisor.  He did not do so, but he left messages with human resources

16  and did not receive a call back.  Id. at 201-202.

17    To establish a claim for discrimination in compensation, a plaintiff must show that the employer paid

18  members of protected groups less than non-minorities for performing substantially equal work measured in

19  terms of skill, effort, and responsibility.  See Chapman v. Pacific Tel. & Tel. Co., 456 F. Supp. 65, 68-69

20  (N.D. Cal. 1978).  Here, plaintiff has offered no evidence that he, or other African-American couriers, were

21  paid less than white employees for performing the same tasks.  In fact, based on plaintiff's own testimony, the

22  "shorting" of time cards appears to have occurred to other employees regardless of race.

23    Accordingly, summary judgment is GRANTED as to this claim.

24

25    **B.    Promotion**

26

27  ───────────────

28    [10] An "On-Line Compliment/Counseling" may be either a compliment or a counseling notation made on a computer by management.

**United States District Court**
For the Northern District of California

### 1.    Statute of limitations and failure to exhaust administrative remedies

FedEx argues that some of plaintiff's promotion claims are barred by the statutes of limitations and by his failure to exhaust administrative remedies. Plaintiff alleges discrimination with respect to three positions: (1) a part-time team leader position for which he applied in October 2001; (2) a courier position for which he applied through the JCATS system; and (3) a full-time courier position for which he applied in 2004 or the beginning of 2005.

Plaintiff filed complaints with the DFEH on June 21, 2002 and July 19, 2002, and he filed an EEOC charge on May 5, 2003. A First Amended Complaint in this action was filed on January 9, 2004, although plaintiff states that "[a] lawsuit was filed on November 8, 2002, in Alameda County Superior Court." Pl. Wilkerson's Opp'n at 9 : 24-25. It is not clear whether plaintiff believes that the 2002 lawsuit is the same case as this federal action.

Before filing a Title VII claim, a plaintiff must file a charge with the EEOC within 300 days of the unlawful employment practice, and must exhaust administrative remedies before coming to court. 42 U.S.C. § 2000e-5(e)(1); Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990). A claim under FEHA must be filed within one year of the unlawful practice. Cal. Gov. Code § 12760. The statute of limitations under § 1981 is four years pursuant to 28 U.S.C. § 1658, except that causes of action that were maintainable prior to the 1991 Civil Rights Act are governed by state statutes of limitations for personal injury actions. Jones v. R.R. Donnelly & Sons Co., 541 U.S. 369, 382-84 (2004).

Plaintiff appears to believe that none of his promotion claims are time-barred because they are all continuing violations. See Pl. Wilkerson's Opp'n at 10-11. Plaintiff is incorrect. Discrete discriminatory acts such as termination, failure to promote, denial of transfer, or refusal to hire constitute separate actionable unlawful employment practices, and the limitations period on each begins to run when the practice occurs. See Lyons v. England, 307 F.3d 1092, 1106 (9th Cir. 2002), quoting Amtrak v. Morgan, 536 U.S. 101, 113 (2002).

FedEx correctly contends that the October 26, 2001 decision not to promote plaintiff to the team leader position occurred more than 300 days before plaintiff's May 5, 2003 EEOC charge, and thus any Title VII claim cannot be based on this alleged failure-to-promote. Plaintiff's FEHA claim is exhausted, however,

1   because his DFEH complaints were timely filed within one year of this decision.  Plaintiff's allegation that he

2   was not promoted to a full-time courier position in 2004 or 2005 is barred for failure to exhaust administrative

3   remedies, because he has not filed any administrative complaint regarding this decision.  With respect to

4   plaintiff's § 1981 claim, FedEx argues that it is subject to a one-year statute of limitations because failure-to-

5   promote claims were maintainable prior to 1990 and because California's personal injury statute was one year

6   at the time the alleged practice occurred.[11]  To determine which statute of limitations governs plaintiff's § 1981

7   claim, however, the Court must consider whether each alleged failure-to-promote would have given rise to an

8   actionable claim prior to the 1991 Civil Rights Act.  Because the Court finds that there are insufficient facts to

9   defeat summary judgment, it does not undertake this inquiry.

11              **2.       Prima facie case regarding discrimination in promotion**

12          Plaintiff's promotion claim is governed by the burden-shifting analysis of <u>McDonnell Douglas v. Green</u>,

13   411 U.S. 792 (1973).  To prevail on his promotion claim, plaintiff must show (1) that he is a member of a

14   protected class, (2) qualified for the position sought, (3) denied the promotion, and (4) that individuals outside

15   of his protected class were promoted.  If he can establish this prima facie case, then the burden shifts to

16   defendant to offer a legitimate, non-discriminatory reason for the action.  If the employer meets this burden, then

17   the plaintiff must show that the reason given is pretextual.

18          Viewing the evidence in the light most favorable to plaintiff, the Court finds that he has not established

19   that a genuine issue of fact exists based on any of the promotion decisions.  For the decision not to hire him as

20   a part-time team leader in October 2001, plaintiff offers no evidence that an individual outside of his protected

21   class was promoted instead.  In addition, plaintiff was informed by the hiring manager, Kimo Jackson, that

22   another candidate "who was already in [the] job class" (and who therefore had priority) had been selected for

23   the position.  Wilkerson Depo., Ex. 6.  Even if plaintiff could establish a prima facie case, there is no evidence

24   of pretext to undermine this non-discriminatory basis for the decision.

25          Plaintiff also alleges that he was interested in a courier position after he passed the Basic Skills Test

27          [11] California's statute of limitations has since been changed to two years, but the new statute is not
retroactive except for claims arising out of the September 11, 2001 attacks.  <u>See</u> <u>Krupnick v. Duke Energy</u>
28   <u>Morro Bay, LLC</u>, 15 Cal. App. 4th 1026 (2004), Cal. Code Civ. P. § 340(3).

United States District Court

For the Northern District of California

("BST").  He told his manager, Roy Johnson, that he was interested in the position, and Johnson said that he would submit the BST to the "JCATS" job posting system.  Id. at 70-72.  According to plaintiff, Johnson delayed submitting his application, and then there was a hiring freeze.  In addition, plaintiff claims that he had to wait two years to qualify for this position, while non-minorities were hired off the street for courier positions. When he talked to his managers about his desire to apply for this position, Robert Motter, Craig Diggle, and Gary Meek told him that they would look into it and get back to him, and they sent him "in circles" telling him to talk to his various managers.  Id. at 26, 28, 29.  Ultimately, plaintiff received assistance from another African-American employee, Andrew Thompson, who showed him how to access the JCATS system and apply for the position.  Id. at 43-45.  Plaintiff applied for a full-time courier position in 2004 or 2005, which he was offered and turned down.

Plaintiff attempts to create a factual issue by offering evidence that a white employee, Gretchen Spear, was promoted to a courier position in 1997, within one year of working at FedEx.  Decl. of Rachael Orejana ¶ 3.  FedEx argues, and the Court agrees, that Spear is not an appropriate comparator for plaintiff because she was not promoted over plaintiff for the position he sought, the hiring manager was not the same, and the gap in time between her hiring as a courier and plaintiff's own employment at FedEx undermines the comparison.

Because plaintiff has failed to establish a factual issue regarding his promotion claim, the Court GRANTS summary judgment.


C.      Harassment

FedEx argues that, under the totality of the circumstances test, plaintiff cannot establish a prima facie case of harassment.  Plaintiff's harassment claim is based on allegations of public humiliation by his managers, including finger pointing and yelling, and on manager Roy Johnson's decision to make Wilkerson work on the heaviest "cans" in "Topside," the most strenuous assignment, while white employees were given smaller cans and assistance in completing their tasks.  Id. at 72.  He alleges that Robert Motter yelled at him and other minority employees, singling them out by name or standing close to them while they were working, but would not yell at Caucasian employees.  Id. at 90-91.  The words he used were: "Come one, come on"; "I'm going to switch you guys if you don't go faster"; and "let's go, let's go."

18

1     Despite the unpleasant nature of these working conditions, the Court cannot find a genuine question

2  of material fact regarding whether a reasonable person of plaintiff's race or national origin would find the

3  workplace so objectively and subjectively racially hostile as to create an abusive working environment.

4  McGinest v. GTE Service Corp., supra, 360 F.3d at 1112.  The Court considers the "frequency of

5  discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive

6  utterance, and whether it unreasonably interferes with an employee's work performance."  Nichols v. Azteca

7  Rest. Enters., 256 F.3d 864, 872 (9th Cir. 2001).  Plaintiff states that he never heard any manager use a racial

8  slur or engage in offensive racial conduct in his presence.  Id. at 88-89.  In addition, the opinion of plaintiff

9  Tanda Brown, who was never employed at the Sunnyvale station, that "assigning an employee to consistently

10  work the topside . . . would alter the terms and conditions of that employee's employment," see Decl. of Tanda

11  Brown ¶ 11, does not create an issue of fact precluding summary judgment.

12     Defendant's motion is GRANTED as to this claim.

13

14     **D.     Discipline**

15     Plaintiff has not received any warning letters or performance reminders during his employment with

16  FedEx.  He has received only three negative OLCCs, and he has testified that he does not believe that race

17  played a role in any of these counselings.  Based on these facts and admissions, summary judgment is

18  GRANTED as to his discipline claim.

19

20     **E.     Retaliation**

21     FedEx contends that it is entitled to summary judgment on plaintiff's retaliation claim because plaintiff

22  was not subjected to any adverse employment action.  Defendant argues that the three negative OLCCs plaintiff

23  received do not constitute an adverse employment action, and nor does his allegation that he was made to work

24  Topside longer than other couriers.  In addition, FedEx argues that plaintiff cannot establish a causal link

25  between these OLCCs and his protected activity because the OLCCs were issued to him prior to his filing any

26  DFEH complaint or EEOC charge, except for the 2003 OLCC charge, which plaintiff admits was justified.

27  The Court finds that, even assuming that the OLCCs could constitute an adverse employment action, plaintiff

28

**United States District Court**
For the Northern District of California

19

United States District Court

For the Northern District of California

1    received two of them on June 28, 2000 and November 27, 2001, before he filed his administrative complaints

2    on June 21, 2002, July 19, 2002, and May 5, 2003.  The third OLCC, which plaintiff was issued on November

3    3, 2003, notified him that he had taken seven sick days and could be subjected to disciplinary action for taking

4    further sick time.  Plaintiff testified that this OLCC was justified, because the manager who issued it, Craig

5    Diggle, "gave [him] factual evidence of [his] missing those sick days," and was a "good guy" who always gave

6    him a "fair shake."  Wilkerson Depo. at 167, 148.  Under these circumstances, there is no causal link between

7    plaintiff's protected activity and any of the few disciplinary actions against him.

8           Defendant's motion is GRANTED as to this claim.

9

10          **F.      Rule 56(f) request**

11          Like John Azzam, plaintiff moves for a Rule 56(f) continuance based on defendant's continued failure

12   to produce all documents responsive to plaintiffs' First and Second Sets of Requests for Production.  Plaintiff

13   here has not met his burden of establishing what documents he has not received that are "essential" to his

14   opposition.  The Court's grant of summary judgment on all of his individual claims is based on the testimony

15   given by plaintiff at his deposition, and it is not clear what further proof, contained in FedEx's files, would create

16   genuine issues of material fact.  In any event, it is plaintiff's burden to make this showing, which he has not done.

17   Moreover, FedEx's summary judgment motion as to this plaintiff was filed and briefed after the series of

18   discovery disputes regarding the requested documents had been resolved.  Accordingly, the Court DENIES

19   plaintiff's request for Rule 56(f) relief.

20

21   **III.    Summary Judgment as to Lore Paogofie**

22          FedEx seeks summary judgment of plaintiff Lore Paogofie's compensation, promotion, retaliation, and

23   harassment allegations.  Plaintiff brings a Rule 56(f) motion with respect to this motion on the same grounds as

24   described above.

25          Lore Paogofie, a Samoan female, began working at FedEx as a part-time handler in April 2000.

26   Paogofie Depo. at 22.  She was promoted to permanent part-time handler on or about June 1, 2000.  Id. at

27   24-25.  While working at FedEx, she also attended San Jose State University full-time.  Id. at 16.  Gary Meek

28

was plaintiff's operations manager at the Sunnyvale facility from 2000 to 2003, and Robert Motter was the senior manager. Id. at 74.

Plaintiff has not received any discipline or written warnings while at FedEx, with the sole exception of one OLCC for jumping over a moving belt. Id. at 222-24. She has received performance evaluation scores ranging from 5.1 to 6.7 out of 7.0 during her time at FedEx. Id. at 290-292. Plaintiff filed DFEH complaints against Gary Meek, Robert Motter, and FedEx on June 13, 2002. She submitted an EEOC charge on May 30, 2003.

In her Opposition, plaintiff states that she made repeated requests for a permanent or full-time position but was passed over for non-minority individuals who applied after her, before she was given a full-time position. Pl. Paogofie's Opp'n at 5:22-6:1. She alleges that, since the arrival of managers Meek and Motter at the Sunnyvale station, she has been assigned to work "Topside," the most strenuous assignment, and that non-minority females with less seniority and experience were given less strenuous assignments. Plaintiff alleges that she has been required to conduct an audit after the first sort on her shift – something non-minority employees are not required to do – as well as forcing her to cancel her vacation and refusing to exercise discretion on her behalf with respect to vacation time, something defendant allegedly has done for non-minority employees. Plaintiff also alleges that she has been harassed by repeated reprimands for trivial matters, public criticism, and "by failing to publicly recognize her for her achievements." Id. at 8:7-8. Plaintiff provides no citations to the record for these allegations. As discussed above, the Court cannot consider any facts unsupported by the record, and will not scour the record in search of support for plaintiff's statements.[12]

## A.    Harassment and discrimination

In her Opposition, Paogofie specifically addresses only the harassment claim. She repeats the paragraph from plaintiff Azzam's motion, and adds the following (Paogofie's Opp'n at 13:9-14):

---

[12] For example, plaintiff cites no evidence in the record to support her allegations of discrimination based on vacation decisions. In any event, plaintiff was never denied a vacation request. Paogofie Depo. at 194-96. Plaintiff planned to take four days off for her graduation, and Meek mistakenly told her that she could be compensated for these days because she had four additional days of vacation time. Although Meek discovered his error and could not compensate her for the days, plaintiff was still permitted to take the time off without pay. Id. at 199-200.

21

United States District Court

For the Northern District of California

1

2

3

> Plaintiff Lore Paogofie was treated differently than non-minority females. In addition, she witnessed the very pregnant African American female employee, Camille Leekins, being treated differently because of her race. They were made to work the heaviest jobs in the station[] "Topside" while non-minority Caucasian Gretchen Spear was rapidly promoted and given easy assignments.

4   In addition to her consistent assignment to Topside for two to three years, Paogofie's harassment and

5   discrimination claims are based on offensive comments made to her by Gary Meek, along with his tone of voice

6   and facial expressions.

7   The Supplemental Parker Declaration #1 states that "[o]nly minority females and not the non-minority

8   females were assigned to the 'Topside' heavy duty line consistently." Supp. Parker Decl. #1 at 5:13-14.

9   Counsel provides no citation to evidence for this statement; she merely states that the affected minority females

10  included plaintiff, an African-American female Lisa McCoy, and an African-American female Camille Leekins,

11  and cites the page of Paogofie's deposition where plaintiff testified that she "[did]n't know any casuals that have

12  been, besides Camille Leekins, Lisa McCoy, myself, working on the line." Paogofie Depo. at 32. Counsel

13  also states that Caucasian females Noelia Anaya and Kolainia Hettig were never made to work Topside on

14  a regular basis and were given assistance when they were, and that Caucasian female Sheshe Maltini has

15  always been a customer service agent ("CSA"). Supp. Parker Decl #1 at 6:16-20. Plaintiff's actual testimony

16  was that she and Lisa McCoy were immediately put on this assignment, while Anaya and Hettig were "there

17  for ten, 15 minutes and then switched off to the doc sort, which is a light duty area," Paogofie Depo. at 131.

18  Camille Leekins, an African American female employee, was made to work Topside when she was pregnant.

19  Id. at 140. With respect to gender discrimination, plaintiff alleges that Caucasian male Herman Hanna was hired

20  as a handler after plaintiff received a courier position; that Bill Bailey was given the lead handler position by

21  Gary Meek after only two to three months on Topside; and that Daniel Durkin worked only two to three

22  months on Topside. Id. at 55, 62-63, 150.

23  Plaintiff submits the Declaration of Tanda Brown, an operations manager at other FedEx facilities,

24  which describes the Topside assignment and states that, "because Topside is so physically demanding and has

25  so many safety issues, most handlers would only be assigned to work in that function for no more than 2

26  consecutive years"; that "[i]n all my experience at FedEx, I knew of no non-minority female worker who was

27  assigned to Topside for more than two years consistently – as happened with Lore Paogofie." Brown Decl.

28

¶¶ 9, 10.  She opines that "it is race discrimination to assign a minority female worker to Topside for more than 2 years consistently, <u>unless she specifically expressed</u> her desire for this position for that duration of time," and that "assigning an employee to consistently work the topside, rather than allowing the employee to be rotated in and out on a basis consistent with other handlers would alter the terms and conditions of that employee's employment.  <u>Id.</u> at ¶¶ 11, 12 (emphasis in original).[13]

According to plaintiff, Gary Meek made offensive remarks to her and commented that she could not speak English.  Supp. Parker Decl. #1 at 7.  At her deposition, plaintiff testified that Meek mocked her by saying "What?" or "What are you talking about" when she spoke.  Paogofie Depo. at 67-68.  Plaintiff also testified that Meek raised his eyebrows at her and lifted his right lip when he said that he did not understand what she was saying.  <u>Id.</u> at 68-69.  Other than this conduct, plaintiff testified that no manager at FedEx has engaged in any conduct or gesture that she found racially offensive.  <u>Id.</u> at 69.

Viewing this evidence in the light most favorable to plaintiff, the Court cannot conclude that there is a triable issue on whether a reasonable person of plaintiff's race or national origin would find the workplace so objectively and subjectively racially hostile as to create an abusive working environment.  <u>McGinest v. GTE Service Corp.</u>, 360 F.3d at 1112.  Plaintiff admits that Caucasian females Anaya and Hettig had more seniority than she and that Daniel Durkin was assigned to document sort because he had a medical condition.  <u>Id.</u> at 133, 137.  The Court agrees with defendant that the Brown declaration is conclusory and speculative, and it does not suffice to show that a Topside assignment, even a lengthy one, creates a racially hostile work environment under an objective standard.  Considering "[the] frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance," <u>see</u> <u>Nichols v. Azteca Rest. Enters.</u>, 256 F.3d at 872, the Court also finds that Meek's comments that he could not understand plaintiff, and his facial expressions and tone, at most amount to "mere offensive utterances."  Under all the circumstances, and in the absence of racially offensive remarks by anyone else at FedEx, Meek's rude demeanor towards plaintiff is not enough.

Plaintiff also alleges discrimination because she did not receive training on a "jumpseat test," which is

_____

[13] Defendant argues that the opinions expressed in the Declaration of Tanda Brown are inadmissible on grounds of hearsay and speculation, because Brown never worked at the Sunnyvale station and thus could not have personal knowledge of the working conditions there.

United States District Court
For the Northern District of California

1    required before an employee may ride in a FedEx plane. However, at her deposition she testified that her

2    manager provided her with the information about the test and she "got into it," but did not have enough time

3    to do it. Paogofie Depo. at 124-25. This allegation of a "denial of training" is simply not supported by the

4    record.

5        Accordingly, the Court GRANTS defendant's motion for summary judgment as to plaintiff's

6    harassment and discrimination claims.

7

8    **B.    Promotion**

9        FedEx argues that plaintiff's promotion claims are barred by the statutes of limitations and by her failure

10   to exhaust administrative remedies. Her DFEH complaints were filed on June 13, 2002, and her EEOC charge

11   on May 30, 2003. Plaintiff's promotion claims are based on events that occurred after she filed both the DFEH

12   complaints and her EEOC charge. Defendant also contends that plaintiff could not establish a promotion claim

13   in any event because she was never denied a promotion, but rather voluntarily withdrew her application for a

14   courier position in October 2003.

15       Plaintiff offers several arguments in response.[14] First, she contends that there are material factual issues

16   to be resolved before the Court can determine if plaintiff's claims are barred by the statute of limitations. This

17   is an incorrect statement of the law; summary judgment is only improper "if tolling of the statute of limitations

18   requires the resolution of disputed factual issues." Admiralty Fund v. Jones, 677 F.2d 1289, 1293 (9th Cir.

19   1983). Since there appears to be no tolling issue, the Court may consider the merits of a summary judgment

20   motion at this time.

21       Plaintiff also contends, inter alia, that she timely filed her DFEH complaint and filed suit within a year

22   after her complaint, that various claims are established through the "continuing violations doctrine," that she "has

23   been harassed, deceived, retaliated against and discriminated in the terms and conditions of her employment,"

24   and that she filed "numerous" agency complaints with the DFEH and EEOC "in a timely manner." Pl.

25   Paogofie's Opp'n at 10:4-12:11. Plaintiff apparently fails to recognize that FedEx has restricted this argument

26

27   _____

28       [14] These appear to be the same arguments raised by plaintiffs Azzam and Wilkerson in their Opposition
     papers.

United States District Court

For the Northern District of California

to her failure-to-promote claim.  As FedEx correctly states, plaintiff was required to file a timely DFEH or EEOC charge after an alleged discriminatory act in promotion, which she did not do.  Moreover, plaintiff's repeated voluntary withdrawals of her applications for various promotions undermine her promotion claim.

Plaintiff also identifies FedEx employee Gretchen Spear as a potential comparator.  Spear was promoted to a courier position in 1997, within her first year of working at FedEx.  Decl. of Rachael Orejana ¶ 3.  Defendant argues that this comparison makes no sense because plaintiff was not even hired at FedEx until 2000, and more importantly, that she was made a permanent employee within two months of being hired, while Gretchen Spear became permanent within three months.  <u>See</u> Paogofie Depo. at 24-25.  The Court agrees that the comparison with Gretchen Spear is unavailing.

Summary judgment is GRANTED as to plaintiff's promotion claim.

### C.    Retaliation

Plaintiff is still employed at FedEx as a permanent part-time handler and has received no warnings, discipline, or lost compensation or benefits.  Her retaliation claim is based on (1) her voluntary withdrawal of an application for a courier position in February 2004 because of a fear of retaliation, (2) four unpaid vacation days that were mistakenly given to her and then withdrawn, (3) FedEx's determination that an injury plaintiff incurred on March 3, 2004 was preventable, and (4) the fact that manager Aaron Holstein assigned her tasks without adequate help in 2004.  Defendant argues that none of these constitutes an adverse employment action.  In addition, defendant argues that, even assuming that plaintiff was subject to an adverse employment action, she cannot establish a causal link between her June 13, 2002 DFEH complaints, her May 30, 2003 EEOC charge, and the alleged retaliatory acts in 2004.

The Court agrees with defendant.  Even if plaintiff could demonstrate that any one of these events constituted an adverse employment action, plaintiff has utterly failed to show any causal link between her administrative complaints in 2002 and 2003 and the events of 2004.  A causal link may be established through circumstantial evidence, but plaintiff must demonstrate her employer's knowledge of the protected activity and proximity in time between the protected activity and the adverse action.  <u>Morgan v. Regents of the Univ. of California</u>, 88 Cal. App. 4th 52 (2000).  Viewing the evidence in the light most favorable to plaintiff, the Court

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  | can find no showing of that the hiring manager for the February 2004 courier position, Gary Meek, or Aaron

2  | Holstein knew about plaintiff's complaints.  Nor does plaintiff argue or show that the nearly two years between

3  | the DFEH complaints and the adverse actions or the seven months between the EEOC charge and the first

4  | action constitutes sufficient proximity in time.  The Court concludes that there is no triable issue of fact regarding

5  | her retaliation claim.

6  |    Summary judgment is GRANTED as to this claim.

7  |

8  |

9  | **D.    Disparate impact claim**

10 |    FedEx also seeks dismissal of plaintiff's disparate impact claim.  <u>See</u> Compl. ¶ 285.  The disparate

11 | impact claim is based on plaintiff's allegation that FedEx applies different standards based on race in disciplining

12 | employees.  According to defendant, plaintiff has failed to observe the critical distinction between disparate

13 | impact and disparate treatment claims, and has in substance alleged a disparate treatment claim.  The Court

14 | agrees.  Plaintiff has not identified a facially neutral policy that falls more harshly on a particular group; rather,

15 | she alleges a pattern of intentional discrimination by defendant in singling out minority employees for more

16 | severe discipline than their white counterparts receive.

17 |

18 | **F.    Rule 56(f) relief**

19 |    Plaintiff seeks a continuance pursuant to Rule 56(f) on the same grounds as discussed above.  As with

20 | plaintiffs Azzam and Wilkerson, Paogofie has not shown what additional facts will be obtained in discovery that

21 | would defeat summary judgment.  Her own testimony establishes that: (1) the facts she alleges do not constitute

22 | objective and subjective harassment; (2) she was never denied a promotion at FedEx; and (3) there are no

23 | facts to support her retaliation claim.  Paogofie's request for a continuance is DENIED.

24 |

25 |    **CONCLUSION**

26 |    For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiffs' requests

27 | for Rule 56(f) relief and GRANTS defendant's motions for summary judgment as to all claims.  [Docket #s

28 |

26

162, 163, 170]

**IT IS SO ORDERED.**

Dated: August 23, 2005

_____
SUSAN ILLSTON
United States District Judge

United States District Court

For the Northern District of California

1

2

3

4

5               IN THE UNITED STATES DISTRICT COURT

6             FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   EDWARD ALVARADO, et al,                    No. C 04-00098 SI
                                               (Related Case No. C 04-0099 SI)
9              Plaintiffs,
                                               **ORDER GRANTING DEFENDANT'S**
10     v.                                      **SUMMARY JUDGMENT MOTIONS AS**
                                               **TO PLAINTIFFS JOHN AZZAM,**
11  FEDEX CORPORATION,                         **CHRISTOPHER WILKERSON, AND**
                                               **LORE PAOGOFIE, AND DENYING**
12             Defendant.                      **PLAINTIFFS' RULE 56(F) REQUESTS**
    _____/
13

14          On August 19, 2005, the Court heard oral argument on defendant's motions for summary judgment

15  as to three plaintiffs: John Azzam, Christopher Wilkerson, and Lore Paogofie and on plaintiffs' requests for

16  relief pursuant to Rule 56(f).  Having carefully considered the arguments of counsel and the papers submitted,

17  the Court hereby GRANTS defendant's motions for the reasons set forth below.

18

19                            **BACKGROUND**

20          This case arises out of plaintiffs' employment with defendant FedEx Corporation ("FedEx" or

21  "defendant").  Plaintiffs allege various forms of discrimination against FedEx, including discrimination in

22  promotion and compensation, harassment, and retaliation, and assert claims for disparate impact and disparate

23  treatment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the California Fair Housing and

24  Employment Act ("FEHA"), Cal. Gov. Code § 12940, and 42 U.S.C. § 1981.  Defendant has filed motions

25  for summary judgment as to three plaintiffs, John Azzam, Lore Paogofie, and Christopher Wilkerson, relying

26  exclusively on the deposition testimony of these plaintiffs.  Plaintiffs oppose the motions and seek relief pursuant

27  to Federal Rule of Civil Procedure 56(f).

28          In requesting Rule 56(f) relief, plaintiffs repeat the same arguments made in Rule 56(f) motions made

*United States District Court*
*For the Northern District of California*

by other plaintiffs,[1] stating that defendants have still not fully produced documents from Plaintiff's First Set of Requests for Production, including external EEO complaints filed with the EEOC and DFEH and a privilege log, and from Plaintiff's Second Set of Requests for Production. According to plaintiffs, until these discovery matters are resolved, they have had no full opportunity to obtain facts necessary to oppose the summary judgment motions.

The discovery disputes in this action have been frequent and heated. On November 23, 2004, plaintiffs served their First Set of Requests for Production on defendant. They then brought a motion to compel production of many of these documents, which was set for hearing on March 11, 2005. At that hearing, defendant stated that it would produce all responsive documents "forthwith," and the parties entered into a stipulated order to that effect. See March 15, 2005 Stipulated Order. Defendant then filed summary judgment motions against four plaintiffs, which were set for May 27, 2005. Plaintiffs sought a continuance of these motions pursuant to Federal Rule of Civil Procedure 56(f) on grounds that defendant had not produced documents as required by the March 11, 2005 stipulated order. On May 25, 2005, the Court granted this request and re-set the hearing for June 24, 2005. On May 26, 2005, defendant filed a letter brief seeking "relief" from the Court's order. Plaintiffs requested an emergency hearing regarding defendant's failure to produce documents, and opposed defendant's request. Plaintiffs also filed an additional request for Rule 56(f) relief. On June 22, 2005, the Court granted a request for a one-week continuance of the four summary judgment motions, which were re-set for July 1, 2005.[2] Plaintiffs subsequently sought a further continuance, pursuant to Rule 56(f), of all six of the summary judgment motions set for Friday, July 1, 2005, which the Court granted during a telephone conference held on June 27, 2005. See Docket # 157. In addition, at that conference, the Court ordered FedEx to produce all documents responsive to plaintiffs' First and Second Sets of Requests for Production by July 8, 2005. Plaintiff subsequently filed a further letter brief claiming that

---

[1] Defendant has also filed summary judgment motions regarding plaintiffs Tanda Brown, Lasonia Walker, Kevin Neely, Pernell Evans, Alexander Rivera, and Gary White. Plaintiffs filed Rule 56(f) requests with respect to those summary judgment motions as well because of FedEx's failure to produce documents responsive to plaintiffs' First and Second Sets of Requests for Production. The Court granted these Rule 56(f) requests but has not yet ordered supplemental briefing for or re-set these motions.

[2] Meanwhile, defendant also filed summary judgment motions against plaintiffs Gary White and Alexander Rivera, set for July 1, 2005.

United States District Court

For the Northern District of California

1   defendant had not produced all responsive documents because it had merely made personnel files available for

2   inspection pursuant to Fed. R. Civ. P. 34, and seeking the Court's intervention.  The Court denied this request.

3   See Docket # 169.

4       On July 28, 2005, plaintiffs' counsel filed a letter brief with the Court asking for a telephone conference

5   regarding defendant's "failure to allow inspection of documents."  Defendant filed a responsive letter describing

6   a different series of events, and it is unclear from these letter briefs what remedy each party seeks.  Plaintiff

7   stated that the documents were not prepared for inspection and that defense counsel's representative

8   "obstruct[ed] our attempts to obtain documents during that on-site inspection."  Parker Decl. Re Azzam ¶ 5.

9

10      The three summary judgment motions now before the Court were filed by defendant on July 15, 2005

11   and noticed for August 19, 2005.  Plaintiffs apparently did not attempt to inspect the relevant documents at

12   FedEx until July 27, 2005.  In support of its request for Rule 56(f) relief, plaintiffs each submit the same

13   arguments – largely verbatim – that they raised in their prior Rule 56(f) filings.  While the Court remains

14   concerned about FedEx's general attentiveness to its discovery obligations, it is not persuaded that defendant's

15   prior failures to produce responsive documents have hampered these three plaintiffs' ability to oppose these

16   summary judgment motions.  Therefore, the Court will consider plaintiffs' Rule 56(f) motions individually, in the

17   context of the factual issues presented by each motion. [3]

18

19                                  **LEGAL STANDARDS**

20   **Summary Judgment**

21      Summary judgment or adjudication is proper when "the pleadings, depositions, answers to

22   interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to

23   any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

24

25      [3] In their oppositions and supplemental materials, each plaintiff asks the Court to take judicial notice
26   of the class action complaint filed with this Court in Satchell, et al. v. FedEx, C 03-2659 SI, as well as of a
    statistical report submitted in that case by Dr. Drogin.  The Court DENIES both requests.  The Court has
27   related cases C 04-0098 SI and 04-0099 SI, but these cases are not formally related to the Satchell class
    action.  In addition, the Drogin Report submitted in that action is not part of the record in this case.  As
28   defendants point out, no experts have been noticed or disclosed in this case.  Accordingly, the Court DENIES
    both request for judicial notice.

3

United States District Court

For the Northern District of California

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." See T. W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 317 (1986)). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. See T.W. Electric, 809 F.2d at 630-31 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348 (1986)); Ting v. United States, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

**Rule 56(f)**

Pursuant to Federal Rule of Civil Procedure 56(f), upon a showing by the party opposing a motion for summary judgment that it "cannot for reasons stated present by affidavit facts essential to justify the party's opposition," the court may deny or continue the motion for summary judgment in order to permit that party an opportunity to obtain necessary discovery. A Rule 56(f) motion should be granted where the party opposing summary judgment makes a timely application that specifically identifies relevant information to be discovered, and there is some basis for believing that such information actually exists, and would prevent summary judgment. Nidds v. Schindler, 113 F.3d 912, 921 (9th Cir. 1996); Visa Int'l Serv. Ass'n v. Bankcard Holders, 784 F.2d 1472, 1475 (9th Cir. 1986).

**DISCUSSION**

United States District Court

For the Northern District of California

In response to defendant's motions, plaintiffs have submitted Opposition briefs, the Declaration of Tanda Brown in Support of Christopher Wilkerson and Lore Paogofie's Oppositions, the Declaration of Kay McKenzie Parker in Support of John Azzam's Opposition, the Declaration of Rachael Orejana in support of all three plaintiffs' Oppositions, and two Supplemental Declarations of Kay McKenzie Parker (Supplemental Declarations #1 and #2). Supplemental Declaration #1 contains "Supplemental Facts" specific to each plaintiff. Supplemental Declaration #2 contains further "Supplemental Facts" that "apply to all three groups of the named plaintiffs, unless otherwise expressly noted as applying to particular plaintiff(s)." Supp. Parker Decl. #2 at 3:7-9. Each Opposition brief devotes several pages to the plaintiff's "Employment History and Specific Facts," but with a few exceptions,[4] these factual narratives are devoid of citations to the record. See Pl. Azzam's Opp'n at 6:1-10:18; Pl. Wilkerson's Opp'n at 6:4-8:18; Pl. Paogofie's Opp'n at 5:19-8:12.

At oral argument on these motions, plaintiffs' counsel described their submissions to the Court as "piecemeal" because of the protracted nature of discovery in this case. Between these piecemeal filings and plaintiffs' failure to cite to the record in its Opposition briefs, it is extremely difficult for the Court to identify which of the statements and arguments by plaintiffs' counsel have evidentiary support. On summary judgment, the Court views all facts in the light most favorable to the non-moving party – here, of course, to plaintiffs. But the Court must restrict its inquiry to facts supported by the record, and plaintiffs may not rely on the allegations made in pleadings or on their beliefs – however reasonable – about the "Ole Boys Network" and the pervasive pattern of race and national origin discrimination at FedEx. For example, the Court cannot consider plaintiffs Azzam and Wilkerson's citations to the complaint filed in this case, the original complaint filed in Alameda County Superior Court, or the complaint filed in Satchell v. FedEx, C 03-2659 SI, a class action pending before this Court, as evidence of termination and differential treatment. See Pl. Azzam's Opp'n at 6:5-7; Pl. Wilkerson's Opp'n at 6:22-24. Unsworn allegations in the pleadings are not facts that can be used to defeat summary judgment. Moreover, it is not the Court's task "to scour the record in search of a genuine issue of triable fact," see Kennan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996), and it "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers

---

[4] For example, plaintiff Wilkerson's Opposition cites to the "Decl. of Tanda Brown" at the end of several paragraphs in the factual summary, but does not specify where in that declaration the supporting facts may be found.

1  with adequate references so that it could conveniently be found."  Carmen v. San Francisco Sch. Dist., 237

2  F.3d 1026, 1031 (9th Cir. 2001).

3     Applying these standards, the Court considers each summary judgment motion in turn.

4

5  **I.     Summary Judgment as to John Azzam**

6     FedEx seeks summary judgment against plaintiff John Azzam on his claims for discrimination based on

7  wrongful termination, failure-to-promote, compensation, discrimination and harassment, and retaliation.

8     Plaintiff Azzam was born in Beirut, Lebanon.  Azzam Depo. at 17.  He began working at FedEx as a

9  data entry clerk, a position he obtained through a temp agency.[5]  Id. at 11-12.  He was hired as a permanent

10  part-time courier at the Sunnyvale facility ("COAA") in September 1999. Id. at 24.  He submitted a resignation

11  for his Monday through Friday part-time route and began working only on Saturdays in June 2001 because

12  of school obligations and an internship with the City of San Jose, but eventually began working another Monday

13  through Friday part-time route.  Id. at 45-48.  He was offered a permanent part-time route in July 2001, which

14  he turned down.  Id. at 49.

15     In January 2002, plaintiff's employment with FedEx was terminated because he received three

16  performance reminders within a 12-month period.  Id. at 102.  Plaintiff was aware that receiving three

17  reminders or some combination of three reminders and written discipline in a 12-month period could result in

18  termination. Id. at 59.  On December 10, 2002, plaintiff filed a complaint with the California Department of Fair

19  Employment and Housing ("DFEH").

20

21     **A.     Wrongful termination claim**

22     FedEx seeks summary judgment on plaintiff's wrongful termination claim on two grounds: (1) that the

23  claim is barred by plaintiff's failure to allege termination as discrimination in the DFEH complaint he filed ten

24

25  _____

26  [5] These facts are taken from plaintiff's deposition testimony and the parties' papers.  As mentioned above, plaintiff's opposition brief contains a narrative description of his employment at FedEx and his discrimination allegations, without citations to the record.  The Court does not rely on this narrative statement,

27  but instead restricts its inquiry to facts for which the parties have provided evidentiary support, including the "Supplemental Facts Specific to Plaintiff Azzam" contained in the Supplemental Declaration #1 of Kay

28  McKenzie Parker ("Supp. Parker Decl. #1").

6

United States District Court
For the Northern District of California

1   months after his termination, and (2) because there is no genuine issue of material fact regarding discrimination

2   in the termination itself.

3          The Court finds that plaintiff's claim is not barred by his failure to specifically allege wrongful termination

4   in his December 10, 2002 DFEH complaint.  Subject matter jurisdiction "extends over all allegations of

5   discrimination that either fell within the scope of the EEOC's actual investigation or an EEOC investigation

6   which can reasonably be expected to grow out of the charge of discrimination." Freeman v. Oakland Unified

7   Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002) (internal citation omitted); see also Sosa v. Hiraoka, 920 F.2d

8   1451, 1456 (9th Cir. 1990) (the court "must inquire whether the original EEOC investigation would have

9   encompassed the additional charges made in the court complaint but not included in the EEOC charge itself").

10  Plaintiff's DFEH complaint alleges harassment, denial of promotion, and retaliation by Robert Motter and Gary

11  Meek "[o]n or about February 7, 2002," approximately one week after his termination on January 31, 2002.

12  Decl. of Christopher Yost, Ex. C.  The dates of the discriminatory acts, perpetrators, and location of the

13  discrimination are all the same as those in plaintiff's termination claim, see B.K.B. v. Maui Police Dep't, 276

14  F.3d 1091, 1100 (9th Cir. 2002), and therefore an agency investigation would certainly have encompassed

15  the circumstances of his departure from FedEx.

16         For a wrongful termination claim, a plaintiff must meet the burden-shifting analysis of McDonnell

17  Douglas v. Green, 411 U.S. 792 (1973), whereby he must first establish a prima facie case that (1) he was a

18  member of a protected class, (2) he performed his job in a satisfactory manner, (3) he was discharged, and

19  (4) that similarly situated individuals outside his protected class were treated more favorably.  McDonnell

20  Douglas Corp., 411 U.S. at 802.  If plaintiff succeeds in establishing a prima facie case, the burden shifts to

21  the employer to provide a legitimate, non-discriminatory reason for the discharge.  If the employer is able to

22  articulate such a reason, then the plaintiff must show that the reason given is pretextual, "either directly by

23  persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing

24  that the employer's proffered explanation is unworthy of credence." Texas Dep't of Community Affairs v.

25  Burdine, 450 U.S. 248, 256 (1981).

26         FedEx argues that plaintiff cannot establish a prima facie case because he was not performing his job

27  in a satisfactory manner based on his admissions during deposition.  In addition, defendant contends that it has

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    articulated a non-discriminatory reason for plaintiff's termination: his four performance reminders, three of

2    which he received in a 12-month period, and three On-Line Compliments and Counselings ("OLCCs"). In

3    his opposition, plaintiff submits evidence of the disciplinary history of a purported comparator, a Caucasian

4    employee named Steve Kelso, who was disciplined for poor attendance and punctuality but apparently not

5    terminated from FedEx. Decl. of Rachael Orejana, Ex. B.

6         Plaintiff received a counseling letter on April 20, 2000, for unsafe driving, because he had received a

7    speeding ticket. Azzam Depo. at 55-57. Plaintiff received a performance reminder on October 25, 2001 for

8    backing into a parked car. Id. at 58-60. On January 3, 2002, he received a second performance reminder

9    in the form of a day off without pay (called a "decision day") because 28 East Coast packages were found

10   mixed in with West Coast packages, and he had received three OLCCs for similar occurrences. Id. at 77-78.

11   The prior occurrences were: a March 27, 2001 OLCC based on his leaving four international packages in the

12   courier checkout room; a November 19, 2001 OLCC for leaving four East Coast packages mixed with West

13   Coast packages, which plaintiff felt was unfair; and a December 11, 2001 OLCC, the details of which he does

14   not remember. On January 29, 2002, plaintiff received a letter of suspension with pay "pending an investigation

15   of potential violations regarding his performance improvement." Azzam Depo. Ex. 17. On January 31, 2002,

16   he received his third performance reminder for overlooking additional packages on January 25, 2002 and

17   January 28, 2002. Id. at 102. He was terminated for receiving three performance reminders in a 12-month

18   period, and he admits that he has no reason to believe there were additional reasons for his termination. Id.

19   at 103-04.

20        To establish a prima facie case despite his disciplinary history, plaintiff draws a comparison to employee

21   Steve Kelso. According to plaintiff:

22       Kelso received repeated counseling, performance reminders and warnings. His problems
         included attendance and punctuality a[s] well as allegations of falsifying delivery records. In
23       fact, Kelso received a total of three performance reminders and/or warnings within [a] 12
         month period. However, Kelso's manager opted not to terminate him.
24

25   Decl. of Rachael Orejana ¶ 4.

26   Defendant argues that plaintiff and Kelso were not disciplined by the same supervisor nor for the same conduct:

27   Kelso was primarily disciplined for poor attendance and punctuality, while plaintiff was disciplined for

28   misdirecting packages. In addition, FedEx contends that, because many of the documented disciplines in

Kelso's file predate plaintiff's employment with the company, there is no true basis for comparison.

Viewing the evidence in the light most favorable to Azzam, the Court finds that he has not established a prima facie case of discrimination because he cannot establish that he was performing his job in a satisfactory manner, as required by McDonell Douglas. In addition, the Court finds that plaintiff has not shown that FedEx's non-discriminatory basis for terminating him is pretextual. Plaintiff admits that the performance-related reasons for his termination are true, and he has presented no evidence that any of these reminders or counselings were motivated by discrimination.[6] The Court therefore GRANTS summary judgment on the wrongful termination claim.

### B. Promotion claim

FedEx seeks summary judgment on plaintiff's promotion claim because Azzam never applied for any position other than the one he held with FedEx. See Azzam Depo. at 44 ("I don't recall ever filling out any type of application for any different position other than what I was."). Plaintiff's promotion allegation is based on the fact that, in 2001, he mentioned to his supervisor, Corey Waiters, that he wanted to work additional hours but was told that there were no full-time routes available. Id. at 29-30. Plaintiff stated that he later saw a Caucasian employee, Michael Potter, coming in as a full-time courier. He admits, however, that he did not know Potter's qualifications, that Potter did not report to Waiters, that Potter worked the "a.m. shift," and that plaintiff did not tell Waiters he wanted to work this shift and could not have worked in the mornings because of his class and internship commitments. Id. at 33-35.

To establish a promotion claim, plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position sought; (3) he was denied the promotion; and (4) individuals outside of the protected class were promoted. Pejic v. Hughes Helicopters, Inc., 840 F.2d 667 (9th Cir. 1988). Viewing

---

[6] In its summary judgment motion, FedEx relied on Azzam's deposition testimony that he did not know of any other FedEx employees who received three written warnings, performance reminders, or a combination, and were not terminated. Azzam Depo. at 151-52, cited in Def.'s Azzam Mot. at 6:18-21. Plaintiff has now provided evidence of at least one other employee who was not terminated despite receiving this amount of discipline. But even assuming that Kelso is an appropriate comparator and that plaintiff has established a prima facie case, plaintiff's admission at deposition that the performance-related reasons for his termination are true and his failure to present evidence suggesting that any of these reminders or counselings were motivated by discrimination defeats his claim.

1    the evidence most favorably to plaintiff, there is simply no basis to find that plaintiff ever applied for any other

2    position or that he was denied a promotion.

3            Summary judgment is GRANTED as to this claim.

4

5        **C.    Compensation claim**

6            The apparent factual basis for plaintiff's compensation claim is his allegation that he had to confront

7    Corey Waiters on several occasions about "shorting" him on his pay, but each time he ultimately received all

8    of his compensation.   Azzam Depo. at 173.   Despite the complaint's allegations of discrimination in

9    compensation, plaintiff testified that he does not believe his race or national origin played a role in his

10   compensation, and he does not believe he was paid differently than other part-time couriers.   Id. at 22, 172.

11

12

13       **D.    Discrimination and harassment claims**

14           FedEx seeks summary judgment on plaintiff's harassment claim on grounds that, based on his

15   deposition testimony, plaintiff cannot show a genuine question of material fact regarding (1) whether a

16   reasonable person of plaintiff's race or national origin would find the workplace so objectively and subjectively

17   racially hostile as to create an abusive working environment; and (2) whether the defendant failed to take

18   adequate remedial and disciplinary action.   McGinest v. GTE Service Corp., 360 F.3d 1103, 1112 (9th Cir.

19   2004).

20           Plaintiff alleges discrimination and harassment by managers Robert Motter and Gary Meek.  According

21   to plaintiff, conditions for minorities at the Sunnyvale station worsened in 2000 when these two men became

22   managers there.  Azzam Depo. at 42.  He felt targeted by these managers, and testified that "[t]he badgering,

23   the insults, the yelling, the screaming, the pointing, you know, is really what made me realize that they had it in

24   for me."  Id.  Specifically, Meek made comments to plaintiff such as "my grandmother works faster than you,"

25   "move faster, quit your yapping, quit talking," and "stack neater."  He believed that Meek watched him and

26   plaintiff Christopher Wilkerson more closely than other employees, and he overheard Meek tell plaintiff

27   Christopher Wilkerson, who is African-American: "you remind me of Stevie Wonder.  Blind, blind as hell,"

28

United States District Court
For the Northern District of California

10

United States District Court

For the Northern District of California

1  which he considered a racial comment.  Id. at 110, 121.

2         With respect to Motter, plaintiff also alleges discrimination based on an incident where Motter required

3  him to do a "twilight delivery"[7] in the Los Altos Hills area.  Plaintiff told Corey Waiters that he felt this was a

4  dangerous assignment because it was raining, and the area was hilly with narrow roads and loose dogs.  Id. at

5  128-29.  According to plaintiff, Motter overheard this statement and spoke to Corey Waiters, and Waiters then

6  told plaintiff that he had to make the delivery or he would lose his job.  Plaintiff handled the route with another

7  person riding with him.  After this incident, plaintiff did not do this route again.  During the second incident,

8  Azzam was working with an African-American employee and three Caucasian employees, when Motter looked

9  at him and said "move faster, don't talk."  Id. at 135-136.  Plaintiff and two other minority employees worked

10 holidays after Motter became a manager at the station, and plaintiff alleges that when he first began working

11 at FedEx, holiday assignments were rotated.  Id. at 177-78.  Plaintiff did not express concern to anyone in

12 management about holiday work schedules; he did not know if there was a bid process to receive holidays off;

13 and he did not know if employees requested the holiday assignment or were required to work then.  Id. at 179-

14 81.

15        In the Ninth Circuit, courts employ a totality of the circumstances test in determining whether a plaintiff

16 has established a hostile work environment, considering factors such as: "[the] frequency of discriminatory

17 conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and

18 whether it unreasonably interferes with an employee's work performance.  Nichols v. Azteca Rest. Enters., 256

19 F.3d 864, 872 (9th Cir. 2001).  To constitute harassment, the workplace must be both objectively and

20 subjectively abusive.  Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000).

21        FedEx argues, and the Court agrees, that Azzam's deposition testimony requires a grant of summary

22 judgment on his harassment claim.  No one at FedEx made a racial slur or offensive remark to plaintiff about

23 his Lebanese or Middle Eastern origin.  The only derogatory comment plaintiff recalls was directed at another

24 employee.  With respect to plaintiff's allegation that Motter required him to make a twilight delivery against his

25 will, plaintiff admits that he does not know whether his race or national origin played any role in this assignment,

26

27 _____

28        [7] A twilight delivery is a nighttime delivery of a package that FedEx had unsuccessfully tried to deliver
   during the day.

11

and testified that Motter just "didn't care about his employees" and did not seem "concerned for [his] safety at all." Id. at 130-31, 136-37. In addition, plaintiff's testimony about Motter's comment "move faster, don't talk" does not establish that Motter was singling him out personally, much less on discriminatory grounds. Plaintiff offers no evidence of racial animus towards him by Meek or Motter, and testifies only about his subjective belief that they were treating him differently based on his national origin. In addition, plaintiff has made no showing that FedEx failed to take remedial action, and he admits that he never used the company's EEO process to complain about the alleged harassment.

Plaintiff's entire opposition to this claim is contained in a single paragraph, which states:

> All of the above factual allegations by plaintiff (and other minorities who have filed administrative and judicial claims against these same defendants during the same time period) demonstrate that plaintiff was subjected to working in a hostile environment that altered the terms and conditions of his employment with FedEx. Non-minority employees were not subjected to such hostility. It is clear that defendants dispute this material fact.

Pl. Azzam's Opp'n at 15:6-11.

Viewing the evidence in the light most favorable to plaintiff, the Court finds that there are no triable issues of material fact for a jury to decide.

Summary judgment is GRANTED as to this claim.


**E.     Retaliation**

FedEx is entitled to summary judgment on plaintiff's retaliation claim. To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in protected activity; (2) his employer subjected him to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. Manatt v. Bank of America, 339 F.3d 792, 800 (9th Cir. 2003). To show a causal link, a plaintiff may use circumstantial evidence, but he or she must demonstrate the employer's knowledge of the protected activity and proximity in time between the protected activity and the adverse action. Morgan v. Regents of the Univ. of California, 88 Cal. App. 4th 52 (2000).

Here, plaintiff's protected activity occurred after the adverse employment action. Azzam was terminated on January 29, 2002, and he filed his DFEH complaint on December 10, 2002. There is no factual basis for a retaliation claim.

**United States District Court**
For the Northern District of California

### F.      Rule 56(f) motion

In his opposition, plaintiff requests a continuance based on defendant's failure to provide documents requested by plaintiff. Plaintiff states that these documents "will substantiate many of [his] factual allegations." In requesting Rule 56(f) relief, plaintiff repeats the arguments from other plaintiffs' Rule 56(f) motions, stating that defendants have still not fully produced documents from Plaintiff's First Set of Requests for Production, including all external EEO complaints filed with the EEOC and DFEH and a privilege log, and from Plaintiff's Second Set of Requests for Production. According to plaintiff, "[u]ntil these outstanding critical discovery matters are resolved, Plaintiffs have had no full opportunity to obtain facts necessary to oppose Defendant's instant motion for summary judgment." Pl. Azzam's Opp'n at 17:15-17.

"Ordinarily, summary judgment should not be granted when there are relevant facts remaining to be discovered, but the party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact." Continental Maritime v. Pacific Coast Metal Trades, 817 F.2d 1391, 1395 (9th Cir. 1987). The moving party bears the burden of showing (1) that they have set forth specific facts that they hope to elicit from further discovery; (2) that these facts exist; and (3) that the facts are "essential" to resist summary judgment. State of California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1997). Although Rule 56(f) motions should be granted fairly freely, the Court cannot see how further discovery would provide additional facts precluding summary judgment against this particular plaintiff. Azzam's own testimony demonstrates that he cannot raise a triable issue of fact as to discrimination in his various claims.

In her declaration in support of the opposition, plaintiff's counsel has informed the Court that, upon reviewing plaintiff's personnel file, she found his parents' personal income tax returns, and that plaintiff has informed her "that at no time whatsoever would he have given FedEx his parents' income tax returns." Decl. of Jay McKenzie Parker in Support of Azzam Opp'n ¶ 6 (emphasis in original). Counsel states that no other employee personnel file reviewed contained similar records, and concludes: "Plaintiff John Azzam . . . believes and, I agree with him, that the Defendant surreptitiously and unlawfully obtained his parents' personnel files for the unlawful purpose of attempting to find out the names of all charitable organizations to which they had given donations. This was because his parents are from a Muslim nation and, based on the national origin of his parents and himself (Lebanese), he was unlawfully and unfairly disciplined, harassed, and eventually terminated

13

United States District Court

For the Northern District of California

1    from FedEx employment." Id. at ¶ 8. Counsel states that she is submitting these documents under seal and asks

2    the Court to allow plaintiff time to investigate how these files were obtained by deposing "operations managers,

3    senior managers, the district managing directors, human resources personnel and other witnesses (whether or

4    not their depositions have previously been taken)" on this issue. Id. at ¶ 9.[8]

5         The Court agrees that FedEx's possession of these tax returns is troubling. At oral argument on this

6    motion, the Court asked counsel for FedEx how his client obtained these records. Counsel responded that he

7    did not know and had not asked because the records are not relevant to the pending motions. This response

8    is unsatisfactory, since the presence of such documents could reflect criminal conduct.[9] However, the Court

9    agrees that the presence of the records in Azzam's file does not itself create factual issues appropriate for jury

10   determination in this employment case.

11        Accordingly, plaintiff's Rule 56(f) motion is DENIED.

12

13   **II.    Summary Judgment as to Christopher Wilkerson**

14        Plaintiff Wilkerson began working at FedEx on November 29, 1999 as a casual handler at the

15   Sunnyvale location. Wilkerson Depo. at 31. Two months later, he was promoted to part-time handler, and

16   on October 27, 2003, he became a part-time courier at the Sunnyvale station. Id. at 32-33, Ex. 8. On

17   November 12, 2002, he received the "Bravo Zulu Outstanding Performance" award from manager Roy

18   Johnson, although he believed that manager Aaron Holstein was really responsible for giving him the award,

19   not Johnson. Id. at 183-84. In 2003, at the suggestion of Aaron Holstein, plaintiff began taking LEAP classes,

20   which are a prerequisite to applying for management positions. Id. at 51-52. Plaintiff eventually dropped out

21   of the class because he had to pick up his daughter in the mornings. Id. at 53. Plaintiff still works at FedEx

22   as a part-time courier. He turned down a full-time courier position in 2004 or the beginning of 2005. Id. at

23   108-109.

24   _____

25        [8] The Court has not received any under seal submission from plaintiff, and hereby ORDERS counsel
     to provide Azzam's tax records for its inspection.
26

27        [9] 26 U.S.C. § 7213 makes it unlawful for federal employees to willfully disclose any tax return to any
     person without authorization, and for other persons to whom unauthorized disclosure has been made to copy
     or publish such returns. That section also makes it unlawful for anyone to solicit or receive unauthorized tax
28   returns. Violations of this statute are punishable by imprisonment for up to 5 years.

14

United States District Court

For the Northern District of California

1    During his employment at FedEx, plaintiff has never received a written warning or performance

2    reminder. He has received thirteen OLCCs, three of which were negative, and the remainder of which were

3    complimentary.[10] The first negative OLCC is from June 28, 2000 about reporting to work on time; the second

4    is from November 27, 2001 regarding a problem with a bucket of 21 East Coast documents that needed to

5    be checked; and the third, received on November 3, 2003, notified him that he had taken seven sick days and

6    could be subjected to disciplinary action for further sick days. Id. at Ex. 13.

7    **A.    Compensation**

8    Plaintiff's compensation claim is apparently based on the allegation that his time cards were altered on

9    two occasions. See Pl. Wilkerson's Opp'n at 6:13-15. Plaintiff does not allege, nor does he offer proof, that

10   FedEx paid African-American employees less than white employees for substantially equal work. FedEx

11   argues that Wilkerson's deposition testimony demonstrates that he cannot establish a compensation claim.

12   Wilkerson testified that he knew of several employees who believed their time cards had been altered: an

13   African-American employee named Andre Megason, a Latino employee, and a Caucasian employee named

14   Lance White. Wilkerson Depo. at 200. Plaintiff reported the suspected altering to senior manager Robert

15   Motter, who told him to talk to his supervisor. He did not do so, but he left messages with human resources

16   and did not receive a call back. Id. at 201-202.

17   To establish a claim for discrimination in compensation, a plaintiff must show that the employer paid

18   members of protected groups less than non-minorities for performing substantially equal work measured in

19   terms of skill, effort, and responsibility. See Chapman v. Pacific Tel. & Tel. Co., 456 F. Supp. 65, 68-69

20   (N.D. Cal. 1978). Here, plaintiff has offered no evidence that he, or other African-American couriers, were

21   paid less than white employees for performing the same tasks. In fact, based on plaintiff's own testimony, the

22   "shorting" of time cards appears to have occurred to other employees regardless of race.

23   Accordingly, summary judgment is GRANTED as to this claim.

24

25   **B.    Promotion**

26

27   _____

28   [10] An "On-Line Compliment/Counseling" may be either a compliment or a counseling notation made on a computer by management.

**1.      Statute of limitations and failure to exhaust administrative remedies**

FedEx argues that some of plaintiff's promotion claims are barred by the statutes of limitations and by his failure to exhaust administrative remedies. Plaintiff alleges discrimination with respect to three positions: (1) a part-time team leader position for which he applied in October 2001; (2) a courier position for which he applied through the JCATS system; and (3) a full-time courier position for which he applied in 2004 or the beginning of 2005.

Plaintiff filed complaints with the DFEH on June 21, 2002 and July 19, 2002, and he filed an EEOC charge on May 5, 2003. A First Amended Complaint in this action was filed on January 9, 2004, although plaintiff states that "[a] lawsuit was filed on November 8, 2002, in Alameda County Superior Court." Pl. Wilkerson's Opp'n at 9:24-25. It is not clear whether plaintiff believes that the 2002 lawsuit is the same case as this federal action.

Before filing a Title VII claim, a plaintiff must file a charge with the EEOC within 300 days of the unlawful employment practice, and must exhaust administrative remedies before coming to court. 42 U.S.C. § 2000e-5(e)(1); Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990). A claim under FEHA must be filed within one year of the unlawful practice. Cal. Gov. Code § 12760. The statute of limitations under § 1981 is four years pursuant to 28 U.S.C. § 1658, except that causes of action that were maintainable prior to the 1991 Civil Rights Act are governed by state statutes of limitations for personal injury actions. Jones v. R.R. Donnelly & Sons Co., 541 U.S. 369, 382-84 (2004).

Plaintiff appears to believe that none of his promotion claims are time-barred because they are all continuing violations. See Pl. Wilkerson's Opp'n at 10-11. Plaintiff is incorrect. Discrete discriminatory acts such as termination, failure to promote, denial of transfer, or refusal to hire constitute separate actionable unlawful employment practices, and the limitations period on each begins to run when the practice occurs. See Lyons v. England, 307 F.3d 1092, 1106 (9th Cir. 2002), quoting Amtrak v. Morgan, 536 U.S. 101, 113 (2002).

FedEx correctly contends that the October 26, 2001 decision not to promote plaintiff to the team leader position occurred more than 300 days before plaintiff's May 5, 2003 EEOC charge, and thus any Title VII claim cannot be based on this alleged failure-to-promote. Plaintiff's FEHA claim is exhausted, however,

United States District Court

For the Northern District of California

because his DFEH complaints were timely filed within one year of this decision.  Plaintiff's allegation that he was not promoted to a full-time courier position in 2004 or 2005 is barred for failure to exhaust administrative remedies, because he has not filed any administrative complaint regarding this decision.  With respect to plaintiff's § 1981 claim, FedEx argues that it is subject to a one-year statute of limitations because failure-to-promote claims were maintainable prior to 1990 and because California's personal injury statute was one year at the time the alleged practice occurred.[11]  To determine which statute of limitations governs plaintiff's § 1981 claim, however, the Court must consider whether each alleged failure-to-promote would have given rise to an actionable claim prior to the 1991 Civil Rights Act.  Because the Court finds that there are insufficient facts to defeat summary judgment, it does not undertake this inquiry.

### 2.   Prima facie case regarding discrimination in promotion

Plaintiff's promotion claim is governed by the burden-shifting analysis of McDonnell Douglas v. Green, 411 U.S. 792 (1973).  To prevail on his promotion claim, plaintiff must show (1) that he is a member of a protected class, (2) qualified for the position sought, (3) denied the promotion, and (4) that individuals outside of his protected class were promoted.  If he can establish this prima facie case, then the burden shifts to defendant to offer a legitimate, non-discriminatory reason for the action.  If the employer meets this burden, then the plaintiff must show that the reason given is pretextual.

Viewing the evidence in the light most favorable to plaintiff, the Court finds that he has not established that a genuine issue of fact exists based on any of the promotion decisions.  For the decision not to hire him as a part-time team leader in October 2001, plaintiff offers no evidence that an individual outside of his protected class was promoted instead.  In addition, plaintiff was informed by the hiring manager, Kimo Jackson, that another candidate "who was already in [the] job class" (and who therefore had priority) had been selected for the position.  Wilkerson Depo., Ex. 6.  Even if plaintiff could establish a prima facie case, there is no evidence of pretext to undermine this non-discriminatory basis for the decision.

Plaintiff also alleges that he was interested in a courier position after he passed the Basic Skills Test

---

[11] California's statute of limitations has since been changed to two years, but the new statute is not retroactive except for claims arising out of the September 11, 2001 attacks.  See Krupnick v. Duke Energy Morro Bay, LLC, 15 Cal. App. 4th 1026 (2004), Cal. Code Civ. P. § 340(3).

United States District Court

For the Northern District of California

("BST").  He told his manager, Roy Johnson, that he was interested in the position, and Johnson said that he would submit the BST to the "JCATS" job posting system.  Id. at 70-72.  According to plaintiff, Johnson delayed submitting his application, and then there was a hiring freeze.  In addition, plaintiff claims that he had to wait two years to qualify for this position, while non-minorities were hired off the street for courier positions.  When he talked to his managers about his desire to apply for this position, Robert Motter, Craig Diggle, and Gary Meek told him that they would look into it and get back to him, and they sent him "in circles" telling him to talk to his various managers.  Id. at 26, 28, 29.  Ultimately, plaintiff received assistance from another African-American employee, Andrew Thompson, who showed him how to access the JCATS system and apply for the position.  Id. at 43-45.  Plaintiff applied for a full-time courier position in 2004 or 2005, which he was offered and turned down.

Plaintiff attempts to create a factual issue by offering evidence that a white employee, Gretchen Spear, was promoted to a courier position in 1997, within one year of working at FedEx.  Decl. of Rachael Orejana ¶ 3.  FedEx argues, and the Court agrees, that Spear is not an appropriate comparator for plaintiff because she was not promoted over plaintiff for the position he sought, the hiring manager was not the same, and the gap in time between her hiring as a courier and plaintiff's own employment at FedEx undermines the comparison.

Because plaintiff has failed to establish a factual issue regarding his promotion claim, the Court GRANTS summary judgment.

### C.     Harassment

FedEx argues that, under the totality of the circumstances test, plaintiff cannot establish a prima facie case of harassment.  Plaintiff's harassment claim is based on allegations of public humiliation by his managers, including finger pointing and yelling, and on manager Roy Johnson's decision to make Wilkerson work on the heaviest "cans" in "Topside," the most strenuous assignment, while white employees were given smaller cans and assistance in completing their tasks.  Id. at 72.  He alleges that Robert Motter yelled at him and other minority employees, singling them out by name or standing close to them while they were working, but would not yell at Caucasian employees.  Id. at 90-91.  The words he used were: "Come one, come on"; "I'm going to switch you guys if you don't go faster"; and "let's go, let's go."

United States District Court

For the Northern District of California

1    Despite the unpleasant nature of these working conditions, the Court cannot find a genuine question

2  of material fact regarding whether a reasonable person of plaintiff's race or national origin would find the

3  workplace so objectively and subjectively racially hostile as to create an abusive working environment.

4  McGinest v. GTE Service Corp., supra, 360 F.3d at 1112.  The Court considers the "frequency of

5  discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive

6  utterance, and whether it unreasonably interferes with an employee's work performance." Nichols v. Azteca

7  Rest. Enters., 256 F.3d 864, 872 (9th Cir. 2001).  Plaintiff states that he never heard any manager use a racial

8  slur or engage in offensive racial conduct in his presence.  Id. at 88-89.  In addition, the opinion of plaintiff

9  Tanda Brown, who was never employed at the Sunnyvale station, that "assigning an employee to consistently

10  work the topside . . . would alter the terms and conditions of that employee's employment," see Decl. of Tanda

11  Brown ¶ 11, does not create an issue of fact precluding summary judgment.

12    Defendant's motion is GRANTED as to this claim.

13

14    **D.    Discipline**

15    Plaintiff has not received any warning letters or performance reminders during his employment with

16  FedEx.  He has received only three negative OLCCs, and he has testified that he does not believe that race

17  played a role in any of these counselings.  Based on these facts and admissions, summary judgment is

18  GRANTED as to his discipline claim.

19

20    **E.    Retaliation**

21    FedEx contends that it is entitled to summary judgment on plaintiff's retaliation claim because plaintiff

22  was not subjected to any adverse employment action.  Defendant argues that the three negative OLCCs plaintiff

23  received do not constitute an adverse employment action, and nor does his allegation that he was made to work

24  Topside longer than other couriers.  In addition, FedEx argues that plaintiff cannot establish a causal link

25  between these OLCCs and his protected activity because the OLCCs were issued to him prior to his filing any

26  DFEH complaint or EEOC charge, except for the 2003 OLCC charge, which plaintiff admits was justified.

27  The Court finds that, even assuming that the OLCCs could constitute an adverse employment action, plaintiff

28

United States District Court

For the Northern District of California

1  received two of them on June 28, 2000 and November 27, 2001, before he filed his administrative complaints

2  on June 21, 2002, July 19, 2002, and May 5, 2003.  The third OLCC, which plaintiff was issued on November

3  3, 2003, notified him that he had taken seven sick days and could be subjected to disciplinary action for taking

4  further sick time.  Plaintiff testified that this OLCC was justified, because the manager who issued it, Craig

5  Diggle, "gave [him] factual evidence of [his] missing those sick days," and was a "good guy" who always gave

6  him a "fair shake."  Wilkerson Depo. at 167, 148.  Under these circumstances, there is no causal link between

7  plaintiff's protected activity and any of the few disciplinary actions against him.

8         Defendant's motion is GRANTED as to this claim.

9

10         **F.      Rule 56(f) request**

11         Like John Azzam, plaintiff moves for a Rule 56(f) continuance based on defendant's continued failure

12  to produce all documents responsive to plaintiffs' First and Second Sets of Requests for Production.  Plaintiff

13  here has not met his burden of establishing what documents he has not received that are "essential" to his

14  opposition.  The Court's grant of summary judgment on all of his individual claims is based on the testimony

15  given by plaintiff at his deposition, and it is not clear what further proof, contained in FedEx's files, would create

16  genuine issues of material fact.  In any event, it is plaintiff's burden to make this showing, which he has not done.

17  Moreover, FedEx's summary judgment motion as to this plaintiff was filed and briefed after the series of

18  discovery disputes regarding the requested documents had been resolved.  Accordingly, the Court DENIES

19  plaintiff's request for Rule 56(f) relief.

20

21  **III.    Summary Judgment as to Lore Paogofie**

22         FedEx seeks summary judgment of plaintiff Lore Paogofie's compensation, promotion, retaliation, and

23  harassment allegations.  Plaintiff brings a Rule 56(f) motion with respect to this motion on the same grounds as

24  described above.

25         Lore Paogofie, a Samoan female, began working at FedEx as a part-time handler in April 2000.

26  Paogofie Depo. at 22.  She was promoted to permanent part-time handler on or about June 1, 2000.  Id. at

27  24-25.  While working at FedEx, she also attended San Jose State University full-time.  Id. at 16.  Gary Meek

28

United States District Court

For the Northern District of California

1    was plaintiff's operations manager at the Sunnyvale facility from 2000 to 2003, and Robert Motter was the

2    senior manager.  Id. at 74.

3           Plaintiff has not received any discipline or written warnings while at FedEx, with the sole exception of

4    one OLCC for jumping over a moving belt.  Id. at 222-24.  She has received performance evaluation scores

5    ranging from 5.1 to 6.7 out of 7.0 during her time at FedEx.  Id. at 290-292.  Plaintiff filed DFEH complaints

6    against Gary Meek, Robert Motter, and FedEx on June 13, 2002.  She submitted an EEOC charge on May

7    30, 2003.

8           In her Opposition, plaintiff states that she made repeated requests for a permanent or full-time position

9    but was passed over for non-minority individuals who applied after her, before she was given  a full-time

10   position.  Pl. Paogofie's Opp'n at 5:22-6:1.  She alleges that, since the arrival of managers Meek and Motter

11   at the Sunnyvale station, she has been assigned to work "Topside," the most strenuous assignment, and that

12   non-minority females with less seniority and experience were given less strenuous assignments.  Plaintiff alleges

13   that she has been required to conduct an audit after the first sort on her shift – something non-minority

14   employees are not required to do – as well as forcing her to cancel her vacation and refusing to exercise

15   discretion on her behalf with respect to vacation time, something defendant allegedly has done for non-minority

16   employees.  Plaintiff also alleges that she has been harassed by repeated reprimands for trivial matters, public

17   criticism, and "by failing to publicly recognize her for her achievements."  Id. at 8:7-8.  Plaintiff provides no

18   citations to the record for these allegations.  As discussed above, the Court cannot consider any facts

19   unsupported by the record, and will not scour the record in search of support for plaintiff's statements.[12]

20

21           **A.    Harassment and discrimination**

22           In her Opposition, Paogofie specifically addresses only the harassment claim.  She repeats the

23   paragraph from plaintiff Azzam's motion, and adds the following (Paogofie's Opp'n at 13:9-14):

24

25   _____

26           [12] For example, plaintiff cites no evidence in the record to support her allegations of discrimination
     based on vacation decisions.  In any event, plaintiff was never denied a vacation request.  Paogofie Depo. at

27   194-96.  Plaintiff planned to take four days off for her graduation, and Meek mistakenly told her that she could
     be compensated for these days because she had four additional days of vacation time.  Although Meek

28   discovered his error and could not compensate her for the days, plaintiff was still permitted to take the time off
     without pay.  Id. at 199-200.

United States District Court

For the Northern District of California

1

2

3

> Plaintiff Lore Paogofie was treated differently than non-minority females. In addition, she witnessed the very pregnant African American female employee, Camille Leekins, being treated differently because of her race. They were made to work the heaviest jobs in the station[] "Topside" while non-minority Caucasian Gretchen Spear was rapidly promoted and given easy assignments.

4  In addition to her consistent assignment to Topside for two to three years, Paogofie's harassment and

5  discrimination claims are based on offensive comments made to her by Gary Meek, along with his tone of voice

6  and facial expressions.

7  The Supplemental Parker Declaration #1 states that "[o]nly minority females and not the non-minority

8  females were assigned to the 'Topside' heavy duty line consistently." Supp. Parker Decl. #1 at 5:13-14.

9  Counsel provides no citation to evidence for this statement; she merely states that the affected minority females

10  included plaintiff, an African-American female Lisa McCoy, and an African-American female Camille Leekins,

11  and cites the page of Paogofie's deposition where plaintiff testified that she "[did]n't know any casuals that have

12  been, besides Camille Leekins, Lisa McCoy, myself, working on the line." Paogofie Depo. at 32. Counsel

13  also states that Caucasian females Noelia Anaya and Kolainia Hettig were never made to work Topside on

14  a regular basis and were given assistance when they were, and that Caucasian female Sheshe Maltini has

15  always been a customer service agent ("CSA"). Supp. Parker Decl #1 at 6:16-20. Plaintiff's actual testimony

16  was that she and Lisa McCoy were immediately put on this assignment, while Anaya and Hettig were "there

17  for ten, 15 minutes and then switched off to the doc sort, which is a light duty area," Paogofie Depo. at 131.

18  Camille Leekins, an African American female employee, was made to work Topside when she was pregnant.

19  Id. at 140. With respect to gender discrimination, plaintiff alleges that Caucasian male Herman Hanna was hired

20  as a handler after plaintiff received a courier position; that Bill Bailey was given the lead handler position by

21  Gary Meek after only two to three months on Topside; and that Daniel Durkin worked only two to three

22  months on Topside. Id. at 55, 62-63, 150.

23  Plaintiff submits the Declaration of Tanda Brown, an operations manager at other FedEx facilities,

24  which describes the Topside assignment and states that, "because Topside is so physically demanding and has

25  so many safety issues, most handlers would only be assigned to work in that function for no more than 2

26  consecutive years"; that "[i]n all my experience at FedEx, I knew of no non-minority female worker who was

27  assigned to Topside for more than two years consistently – as happened with Lore Paogofie." Brown Decl.

28

¶¶ 9, 10.  She opines that "it is race discrimination to assign a minority female worker to Topside for more than 2 years consistently, <u>unless she specifically expressed</u> her desire for this position for that duration of time," and that "assigning an employee to consistently work the topside, rather than allowing the employee to be rotated in and out on a basis consistent with other handlers would alter the terms and conditions of that employee's employment."  <u>Id.</u> at ¶¶ 11, 12 (emphasis in original).[13]

According to plaintiff, Gary Meek made offensive remarks to her and commented that she could not speak English.  Supp. Parker Decl. #1 at 7.  At her deposition, plaintiff testified that Meek mocked her by saying "What?" or "What are you talking about" when she spoke.  Paogofie Depo. at 67-68.  Plaintiff also testified that Meek raised his eyebrows at her and lifted his right lip when he said that he did not understand what she was saying.  <u>Id.</u> at 68-69.  Other than this conduct, plaintiff testified that no manager at FedEx has engaged in any conduct or gesture that she found racially offensive.  <u>Id.</u> at 69.

Viewing this evidence in the light most favorable to plaintiff, the Court cannot conclude that there is a triable issue on whether a reasonable person of plaintiff's race or national origin would find the workplace so objectively and subjectively racially hostile as to create an abusive working environment.  <u>McGinest v. GTE Service Corp.</u>, 360 F.3d at 1112.  Plaintiff admits that Caucasian females Anaya and Hettig had more seniority than she and that Daniel Durkin was assigned to document sort because he had a medical condition.  <u>Id.</u> at 133, 137.  The Court agrees with defendant that the Brown declaration is conclusory and speculative, and it does not suffice to show that a Topside assignment, even a lengthy one, creates a racially hostile work environment under an objective standard.  Considering "[the] frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance," <u>see</u> <u>Nichols v. Azteca Rest. Enters.</u>, 256 F.3d at 872, the Court also finds that Meek's comments that he could not understand plaintiff, and his facial expressions and tone, at most amount to "mere offensive utterances."  Under all the circumstances, and in the absence of racially offensive remarks by anyone else at FedEx, Meek's rude demeanor towards plaintiff is not enough.

Plaintiff also alleges discrimination because she did not receive training on a "jumpseat test," which is

_____

[13] Defendant argues that the opinions expressed in the Declaration of Tanda Brown are inadmissible on grounds of hearsay and speculation, because Brown never worked at the Sunnyvale station and thus could not have personal knowledge of the working conditions there.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    required before an employee may ride in a FedEx plane.  However, at her deposition she testified that her

2    manager provided her with the information about the test and she "got into it," but did not have enough time

3    to do it.  Paogofie Depo. at 124-25.  This allegation of a "denial of training" is simply not supported by the

4    record.

5          Accordingly, the Court GRANTS defendant's motion for summary judgment as to plaintiff's

6    harassment and discrimination claims.

7

8          **B.      Promotion**

9          FedEx argues that plaintiff's promotion claims are barred by the statutes of limitations and by her failure

10   to exhaust administrative remedies.  Her DFEH complaints were filed on June 13, 2002, and her EEOC charge

11   on May 30, 2003.  Plaintiff's promotion claims are based on events that occurred after she filed both the DFEH

12   complaints and her EEOC charge.  Defendant also contends that plaintiff could not establish a promotion claim

13   in any event because she was never denied a promotion, but rather voluntarily withdrew her application for a

14   courier position in October 2003.

15         Plaintiff offers several arguments in response.[14]  First, she contends that there are material factual issues

16   to be resolved before the Court can determine if plaintiff's claims are barred by the statute of limitations.  This

17   is an incorrect statement of the law; summary judgment is only improper "if tolling of the statute of limitations

18   requires the resolution of disputed factual issues."  Admiralty Fund v. Jones, 677 F.2d 1289, 1293 (9th Cir.

19   1983).  Since there appears to be no tolling issue, the Court may consider the merits of a summary judgment

20   motion at this time.

21         Plaintiff also contends, inter alia, that she timely filed her DFEH complaint and filed suit within a year

22   after her complaint, that various claims are established through the "continuing violations doctrine," that she "has

23   been harassed, deceived, retaliated against and discriminated in the terms and conditions of her employment,"

24   and that she filed "numerous" agency complaints with the DFEH and EEOC "in a timely manner."  Pl.

25   Paogofie's Opp'n at 10:4-12:11.  Plaintiff apparently fails to recognize that FedEx has restricted this argument

26

27   _____

28         [14] These appear to be the same arguments raised by plaintiffs Azzam and Wilkerson in their Opposition
     papers.

24

United States District Court
For the Northern District of California

1  to her failure-to-promote claim.  As FedEx correctly states, plaintiff was required to file a timely DFEH or

2  EEOC charge after an alleged discriminatory act in promotion, which she did not do.  Moreover, plaintiff's

3  repeated voluntary withdrawals of her applications for various promotions undermine her promotion claim.

4  Plaintiff also identifies FedEx employee Gretchen Spear as a potential comparator.  Spear was

5  promoted to a courier position in 1997, within her first year of working at FedEx.  Decl. of Rachael Orejana

6  ¶ 3.  Defendant argues that this comparison makes no sense because plaintiff was not even hired at FedEx until

7  2000, and more importantly, that she was made a permanent employee within two months of being hired, while

8  Gretchen Spear became permanent within three months.  See Paogofie Depo. at 24-25. The Court agrees that

9  the comparison with Gretchen Spear is unavailing.

10  Summary judgment is GRANTED as to plaintiff's promotion claim.

12  **C.      Retaliation**

13  Plaintiff is still employed at FedEx as a permanent part-time handler and has received no warnings,

14  discipline, or lost compensation or benefits.  Her retaliation claim is based on (1) her voluntary withdrawal of

15  an application for a courier position in February 2004 because of a fear of retaliation, (2) four unpaid vacation

16  days that were mistakenly given to her and then withdrawn, (3) FedEx's determination that an injury plaintiff

17  incurred on March 3, 2004 was preventable, and (4) the fact that manager Aaron Holstein assigned her tasks

18  without adequate help in 2004.  Defendant argues that none of these constitutes an adverse employment action.

19  In addition, defendant argues that, even assuming that plaintiff was subject to an adverse employment action,

20  she cannot establish a causal link between her June 13, 2002 DFEH complaints, her May 30, 2003 EEOC

21  charge, and the alleged retaliatory acts in 2004.

22  The Court agrees with defendant.  Even if plaintiff could demonstrate that any one of these events

23  constituted an adverse employment action, plaintiff has utterly failed to show any causal link between her

24  administrative complaints in 2002 and 2003 and the events of 2004.  A causal link may be established through

25  circumstantial evidence, but plaintiff must demonstrate her employer's knowledge of the protected activity and

26  proximity in time between the protected activity and the adverse action.  Morgan v. Regents of the Univ. of

27  California, 88 Cal. App. 4th 52 (2000).  Viewing the evidence in the light most favorable to plaintiff, the Court

28

United States District Court

For the Northern District of California

can find no showing of that the hiring manager for the February 2004 courier position, Gary Meek, or Aaron Holstein knew about plaintiff's complaints. Nor does plaintiff argue or show that the nearly two years between the DFEH complaints and the adverse actions or the seven months between the EEOC charge and the first action constitutes sufficient proximity in time. The Court concludes that there is no triable issue of fact regarding her retaliation claim.

Summary judgment is GRANTED as to this claim.

### D.      Disparate impact claim

FedEx also seeks dismissal of plaintiff's disparate impact claim. <u>See</u> Compl. ¶ 285. The disparate impact claim is based on plaintiff's allegation that FedEx applies different standards based on race in disciplining employees. According to defendant, plaintiff has failed to observe the critical distinction between disparate impact and disparate treatment claims, and has in substance alleged a disparate treatment claim. The Court agrees. Plaintiff has not identified a facially neutral policy that falls more harshly on a particular group; rather, she alleges a pattern of intentional discrimination by defendant in singling out minority employees for more severe discipline than their white counterparts receive.

### F.      Rule 56(f) relief

Plaintiff seeks a continuance pursuant to Rule 56(f) on the same grounds as discussed above. As with plaintiffs Azzam and Wilkerson, Paogofie has not shown what additional facts will be obtained in discovery that would defeat summary judgment. Her own testimony establishes that: (1) the facts she alleges do not constitute objective and subjective harassment; (2) she was never denied a promotion at FedEx; and (3) there are no facts to support her retaliation claim. Paogofie's request for a continuance is DENIED.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiffs' requests for Rule 56(f) relief and GRANTS defendant's motions for summary judgment as to all claims. [Docket #s

162, 163, 170]

**IT IS SO ORDERED.**

Dated: August 23, 2005

_____
SUSAN ILLSTON
United States District Judge

United States District Court

For the Northern District of California